UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2012 OCT 10  A 10: 44

U.S. DISTRICT COURT
DISTRICT OF MASS

PAUL M JONES

Plaintiff

V.

Civil Action No.

1:12-CV-11503-RWZ

BANK OF NEW YORK,
Trustee For the Certificate Holders,
CWABS, Inc., Asset-Backed
Certificates, Series 2004-7,
ANNMARIE CASSANO
LEON DANIELS
PAUL CONNOLLY
STEPHANIE WHITED
BANK OF AMERICA (FORMALLY COUNTRYWIDE HOME LOANS, INC).
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS.
GOODWIN PROCTOR LLP.
RICHARD A. OETHEIMER
ERIN M.MICHAEL
MATHEW J. THALER
ABLITT LAW OFFICE
WALTOR PORR
MATHEW R. BRAUCHER
TIFFANY SKAIFE
MELISSA FLANAGAN
SANDRA J. ROBINSON
OPTIMA MORTGAGE
AMANDA FARRAR
MARK BISHOP

Defendants

# FIRST AMMENDED COMPLAINT

## Parties

1.    The Plaintiff is a resident of Stoughton, County of Norfolk, Massachusetts and a citizen of the United
States.

2.    Bank of New York Trustee for the Certificate Holder, CWABS, Inc., Asset- Backed Certificates, Series 2004-7
(BONY) is a Delaware corporation, and has a usual place of business at 7105 Corporate Drive Plano, Texas 75024.

3.  Bank of America Home Loans (BOA) has a usual place of business at 7105 Corporate Drive Plano, Texas 75024.

4.  Mortgage Electronic Registration Systems (MERS) is a Corporation with a usual place of business at 1901E. Voorhees Street Suite C Danville, IL 61834.

5.  Optima Mortgage Corporation (OMC) is a Mortgage Lender with a usual place of business at 15491 Red hill Ave Tustin, Ca 92780.

6.  Goodwin & Proctor LLP. (GWP) is a Law Firm and has a usual place of business at 53 State Street Boston, Ma 02109.

7.  Ablitt Law Office P.C (ABLITT) is a Law Firm and has a usual place of business at 304 Cambridge Street Woburn, Ma 01801.

8.  Waltor Porr (hereafter WP) is an employee of ABLITT (formally ABLITT and Charlton, P.C) and is a resident of Massachusetts.

9.  Richard A. Oetheimer (RAO) is an Attorney for Goodwin & Proctor and is a resident of Massachusetts and a citizen of the United States.

10. Erin M. Michaels (EM) is an Attorney for Goodwin & Proctor and is a resident of Massachusetts and a citizen of the United States.

11. Mathew J. Thaler (MJT) is an Attorney for Goodwin & Proctor and is a resident of Massachusetts and a citizen of the United States.

12. Mathew R. Braucher (MRB) is an Attorney for ABLITT Law P.C and is a resident of Massachusetts and a citizen of the United States.

13. Tiffany Skaife (TS) Assistant Secretary of Bank of New York.

14. AnnMarie Cassano (AMC) is the Vice President of Bank of New York and the Trustee for the Certificate holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-7.

15. Sandra J. Robinson (SRR) is a notary that is employed by Bank of America.

16. Leon Daniels (LD) is the Senior Vice President of Countrywide Home Loans, Inc

17. Paul Connolly (PC) is the Vice President of Bank of New York.

18.  Stephanie Whited (SW) is the Vice President of BNY WESTERN TRUST COMPANY,
     as Co-Trustee

19.  M. Kelly Mitchie (MKM) is the Vice President of Bank of America.

20.  Amanda Farrar (AF) is the Vice President of bank of America.

21.  Mark Bishop (MB) is the Vice President of bank of America.

### Jurisdiction

22.  This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

### Facts

23.  This is an action for damages which exceed $75,000.00.

24.  Defendants AMC, ABLITT, GWP, and has been directly notified of its illegal and unethical activities in
     the foreclosure case against Plaintiff. Defendants has overseen the violations of Federal Debt Collection
     Practices Act (FDCPA) , and M.G.L93a  and chosen to ignore their responsibilities in rectifying these
     problems.

25.  Plaintiff sent a letter to Defendants PC, LD, SW, AMC, ABLITT, GWP and their employees (Lawyers)
     informing them of the fraudulent assignment of mortgage in plaintiffs files from MERS to BONY and
     Alissa A. Reatz (AAR) is an Associate Client Service Manager of Mortgage-Backed Securities at Bank
     New York Mellon she responded in a letter on August 30,2012 (EXHIBIT 1) by stating: "BNY Mellon is
     a Trustee therefore we do not physically own the loan or the property, we do not have any say in how the
     property is disposed, loan modifications, code violations, etc. This is the responsibility of the Servicer.
     Since BOA services the loan associated with the property, they are the direct and only contact in regards
     to your request. I have forwarded your email to them for handling. Please contact me should you not hear
     from them. I have also included their contact information below". BONY is admitting they do not
     physically own the loan or the property.

26.  Alissa A. Reatz (AAR ) should know or should have known the owner of the property, the debt has been
     litigated continually, All Defendants have stated through their writings and documents presented to

Boston federal Bankruptcy Court, Dedham Superior Court and Stoughton District Court, Norfolk Registry of Deeds and the Boston Land Court that BONY is the owner of plaintiffs mortgage and note.

27.  Plaintiff still resides at 572 Park Street, Stoughton, Ma 02072 in the home that was fraudulently foreclosed upon by BONY.

28.  Alissa A. Reatz (AAR) currently works in the Client Service Manager Mortgage-Backed Securities office at Bank New York Mellon and she has firsthand knowledge of BONYs mortgage backed securities files, she assured me that according to all files regarding 572 Park Street, Stoughton, Ma 02072 that BONY is not the current owner of the property, I amended this complaint to reflect the violation of the (FDCPA), M.G.L 93a, Truth in Lending Act (TILA), The Real Estate Settlement Procedures Act (RESPA), Civil Conspiracy, Abuse of Legal Process, Slander of Title, Fair Credit Reporting Act (FCRA), Common Law Fraud, and Intentional Infliction of Emotional Distress that have been violated.

29.  Defendants ABLITT, GWP, and their employees have filed several (EXIHBIT 2) assignments in several court dockets (Stoughton District Court, Boston Federal Bankruptcy Court, Dedham Superior Court) and the Norfolk Registry of Deeds, Erin Michaels (EM) and several lawyers through their writings have stated that BONY is the holder of Plaintiffs Mortgage and Note, that is a violation of M.G.L 93a and the FDCPA.

30.  Defendants have violated the M.G.L 93a,plaintiff will be mailing out 93a letters to GWP and employees because they are Massachusetts residents and their business is located in Massachusetts in accordance with MGL 93a requirements.

31.  For statute of limitations purpose in some of the violation it was impossible for plaintiff to prove the conduct herein until plaintiff received the letter from AAR, BONY attorney and the Robo-signer fraud broke which lead to the settlement between the big banks and Attorney Generals.

32.  Defendant BOA mailed plaintiff an answer on September 27, 2012 to a Qualified Written request (QWR) that plaintiff sent BOA on July 9, 2012, which states (EXHIBIT 3) the current owner of plaintiff note is The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2004-7, This letter is a clear violation of the FDCPA 15

U.S.C. §1692e, §1692e (2) , 1692e (10), 1692e (11), §1692f (1),§1692d, §1692e (6),§1692e(8), §1692e(11), §1692f (6). The accounting that was provided by BONYs Attorney on September 27,2012 did not correspond with the accounting that was filed in Plaintiffs Bankruptcy cases that BONYs Attorney (ABLITT) filed (Exhibit 4&5) Motion For relief From Stay, each version of account is completely false none match up.

33. Defendant BOA also violated M.G.L 93a Unfair and Deceptive Trade Practices Act when they mailed the September 27, 2012 QWR response letter to plaintiff.

34. On information and belief under the Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA) In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, Optima Mortgage, BOA and BONY violated these acts.

35. Defendant AMC has ignored Plaintiff's request for the Assignment and Assumption Agreement (AAA). Plaintiff has sent several QWR to BOA and they have deliberately failed to respond in a proper and timely manner to plaintiff's ''Qualified Written Requests'' for information about, and corrections to, his mortgage account, in violation of 12 U.S.C. §2605(e).

36. Plaintiff alleges that all Defendants intentionally acted in concert and in furtherance of the conspiracy to defraud plaintiff of his money and property when they knew that they lacked the legal right to do so.

37. Pursuant to the Pooling & Servicing Agreement (PSA EXHIBIT 15) section 2.01 the Depositor conveys the Mortgage to the Trustee. MERS, Inc is not the Depositor of the Trust and did not have authority to assign the Mortgage to the Trustee.

38. Securitization is the process through which an issuer creates a financial instrument by combining other financial assets and then marketing different tiers of the repackaged instruments to investors. The process can encompass any type of financial asset and promotes liquidity in the marketplace.

39. On June 22, 2004, Plaintiff executed a negotiable promissory note and a security interest in the form of a mortgage approximately $274,550.00 and plaintiff used $48,347.00. Of his own money as a deposit, the

mortgage document was filed as document number Book 22224, Pg 219 in the Norfolk Registry of Deeds. The original lender of the promissory note is Optima Mortgage Corporation, Mortgage Electronic Registration Systems, Inc. ("MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for lender as the beneficiary of the mortgage.

40. Defendant BONY through their attorney ABLITT conducted a foreclosure when they lacked the legal right to do so and misrepresented to plaintiff their role as the owner of Plaintiffs Mortgagees and Note.

41. The note was sold, transferred and securitized into CWABS Inc., Asset-Backed Certificates, Series 2004-7. MERS: https://www.mers-servicerid.org/sis/ search indicates Bank of America, N.A. is the Servicer and The Bank of New York Mellon is the Investor, link to the Plaintiff PSA http://www.sec.gov/Archives/edgar/data/1021913/000095013604003163/file001.htm

42. Plaintiff's loan was securitized and registered with the SEC and deposited in the trust called BANK OF NEW YORK, Trustee For the Certificate Holders, CWABS, Inc., Asset-Backed Certificates, Series 2004-7. Defendants AMC, BONY and BOA never bothered to transfer plaintiff's mortgage file to the trust. This constitutes both mortgage fraud and securities fraud and is a violation of the Pooling and Service Agreement that governs the trust.

43. Defendants AMC, BOA and BONY perpetrated a scheme to defraud the investors and the Plaintiff. They enforced a written rule that would allow BONY trustee to insure all homes in the pool 30 times the face value which is legal, therefore allowing them to collect approximately $8,236,500.00 just from Plaintiff's home if and when Plaintiff became Ninety One days (91) late. This rule also allowed BONY to only securitize the investor's money not the mortgages or notes.

44. BONY had an unwritten rule to force the Plaintiff into defaulting on his mortgage by miscalculating the escrow account and adding on fees and or placing forced placed insurance upon Plaintiff's property, when in fact Plaintiff had his own insurance in place.

45. The closing date for the BONY trust was on or about September 28, 2004 (see Exhibit 15). The trust was not authorized to acquire mortgages after this date, and certainly was not authorized to ever acquire any non-performing mortgages.

46.  Defendants BOA formally Countrywide (The Servicer) miscalculated plaintiffs mortgage and added approximately $850.00 to an escrow account and charged one month in advance. This resulted in the Plaintiff's loan increasing from approximately $1900 to approximately $3200. The increase happened in the first 14 months before the rate adjusted guaranteeing that the Plaintiff would become 91 days late. This allowed BOA to be able to collect millions of dollars from insurance policies and then foreclose using fraudulent Assignments of Mortgages (AOMs) and other fraudulent documents.

47.  CWABS Inc. the depositor and CWABS Asset- Backed Certificates Trust 2004-7 the Trust Fund Issuing Entity were not MERS Members.

48.  An Assignment of mortgage was filed in the Norfolk County Registry of Deeds on February 25, 2008. This (EXHIBIT6 pg21) document purports to be executed by MERS to BONY signed by known robo signers.

49.  Exhibit 6 is a title search performed by Stanley Poster an attorney practicing since 1970 and he states that there is no document on file authorizing foreclosure deed or a vote to authorized Tiffany Skaife to sign AOM.

50.  The mortgage file was never officially transferred to the Trust. There is no evidence that the original lender endorsed the note to the seller or that the Mortgage Loan was properly assigned a new holder-in due-course. If such assignment did occur, Plaintiff was never notified of it as they should have been according to federal RESPA law plaintiff never received notice of transfer or assignment from any of the Defendants which is a violation both State and Federal law and a breach of agreement.

51.  This alleged negotiable instrument, which appears to be non-performing (In default) was not delivered to the alleged REMIC within the time frame of the closing date of the trust. Due to the post dated forged signatures on the assignment questions regarding chain of title and holder due course issues, as well as, questions in regard to who had standing to initiate the foreclosure action and subject matter jurisdiction.

52.  Plaintiff disputes that BONY is in possession of the note and has a substantive right to enforce the note and mortgage as a holder in due course.

53. Plaintiff has a document (EXHIBIT 7) that was supplied by GWP attorneys for BONY it is a Recommitment Confirmation Letter from BOA to Optima Mortgage to purchase plaintiff mortgage or note for the sum of $102.875 dollars and is dated February 11, 2011 how was Optima Mortgage able to sell plaintiff Mortgage and or note to BOA when it was suppose to have been securitized (Deposited) in the trust, this is undeniable the truth that plaintiffs mortgage and or note was not deposited in the trust, and that Optima mortgage still had plaintiffs mortgage and or note that explain why Optima Mortgage took out an Insurance policy on plaintiffs home in 2005 (EXHIBIT 8).

54. Defendant's assignment of mortgage is invalid because authority and notary provisions were not satisfied. Tiffany Skaife is not an Assistant Secretary of MERS (No Authority), Sandra J Robinson (EXHIBIT 9) is a fraudulent notary (a fake and or fraud), and Melissa Flanagan and Amanda Farrar are robo signers. Therefore, assignments are invalid and void.

55. On February 25, 2008 a Foreclosure Deed by Corporation was filed in the Norfolk County Registry of Deeds. This document, like the mortgage, states that MERS was the beneficiary under the mortgage it does not state that MERS was the beneficiary under the promissory note. This document properly identifies the amount of the mortgage loan that the Plaintiff obtained on June 22, 2004.

56. Defendants have violated the FDCPA through the collection of the debt.

57. The note and mortgage have taken two distinctly different paths. The note was securitized into CWABS Inc., Asset-Backed Certificates, Series 2004-7.

58. Defendant BONY brought a cause of action hoping to gain a cause of action BONY start the foreclosure in land court on November 6, 2006 the AOM states that it was notarized on November 20, 2006 Fourteen days after the foreclosure was initiated.

59. For an Assignment to be effective, it is essential that the owner of the right to be transferred manifest an intention to transfer the right, and the burden of proving an assignment lies with the party asserting the rights.

60. The written agreement that created the CWABS Inc., Asset-Backed Certificates, Series 2004-7 is a "Pooling and Servicing Agreement" (PSA), and is a matter of public record, available on the website of

the Securities Exchange Commission (SEC). The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" of on or about *September 28, 2004*. The promissory note in this case became trust property in compliance with the requirement set forth in the PSA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PSA are governed under the law.

61.   In view of the foregoing, all Assignment of mortgages executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument (PSA).

62.   The loan was originally made to Optima Mortgage Corporation and was sold and transferred to CWABS Inc., Asset-Backed Certificates, Series 2004-7. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement so therefore there is no complete chain of title.

63.   By statute, assignment of the mortgage carries with it the assignment of the debt indeed, in the event that a mortgage loan somehow separates interests of the note and the mortgage, with the mortgage lying with some independent entity, the mortgage may become unenforceable.

64.   No entity can be a creditor if they do not hold/own the asset in question. A Mortgage Pass through Trust cannot hold assets for if they do, their tax exempt status is violated and the Trust itself is void. Either the defendant BONY Trust has voided its intended Tax Free Status or the asset is not owned by it.

65.   Plaintiff requested from MERS a milestone report by certified mail and MERS has ignored Plaintiffs request which is a violation of M.G.L 93a Unfair and Deceptive Trade Practices Act and or RESPA and or TILLA violations.

66.   The practical effect of splitting the mortgage from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the mortgage is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the mortgage will never experience default because only the holder of

the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the mortgage.

67. Defendants BONY failed to perform conditions precedent in the initiation of the foreclosure action. BOA was the original owner of plaintiff mortgage allegedly when a meeting of the creditors took place in Bankruptcy Court all notices of acceleration and foreclosure was from BOA (formally Countrywide) then mid way through Bankruptcy. BOA withdrew and then BONY claim to own mortgage and note and never conducted the proper condition precedence upon plaintiff which in itself is grounds to dismiss the foreclosure and rule it invalid.

68. Plaintiff asserts all terms and condition of the promissory note and mortgage upon which defendants claims where based.

69. Plaintiff was denied all requirements of the applicable mortgage foreclosure statues, and defendants BOA and MERS are in violation of section 20 of the mortgage "sale of note change of loan servicer: Notice of Grievance, The note or partial interest in the note (together with this Security Instrument) can be sold one or more times without **PRIOR** notice to borrower". Plaintiff was never notified of such a sale which is a violation of Real Estate Settlement Procedures Act (RESPA).Optima Mortgage, BOA or BONY has never informed plaintiff of sale or transfer of mortgage or note which is also a violation of M.G.L 93a Unfair and Deceptive Trade Practices.

70. Plaintiff states that the defendant MERS, BOA or BONY was not the lawful assignee of the promissory note and mortgage upon which defendant alleged at the initiation of the foreclosure at that time.

71. Upon information and belief defendant BONY are not and were not in possession of the promissory note and mortgage at the time of the initiation of the foreclosure.

72. Upon information and belief, defendants BONY did not have any interest in the note or mortgage at the time of the initiation of the foreclosure.

73. Plaintiff states that all the defendants came to court with unclean hands which results from defendant's improvident intentional failure to comply with material terms of the mortgage and note, defendants have waived their rights because of unfulfilled contractual and equitable condition precedents.

74. Plaintiff states that upon new discovered information and belief, I the Plaintiff, have made all payments required by law under the circumstances, however Defendant BOA and or employees and or agents improperly applied payments resulting in the fiction that plaintiff was in default. Defendants accounting cannot be relied upon to determine the rightful amount owed. Further, the principle amount said to be owed is not owed and is the wrong amount. The loan was not properly credited or amortized.

75. Plaintiff states that upon information and belief BOA (formally Countrywide Home loans) wrongfully applied forced placed insurance when plaintiff had insurance and forwarded proof to BOA. Forced placed insurance was still added and charged to plaintiff's account.

76. Defendants BONY and BOA failed to comply with the foreclosure prevention loan servicing requirements.

77. Plaintiff states defendant BONY and BOA have charged and or collected payments from plaintiff for attorney's fees, legal fees, litigation attorney's fees, foreclosure cost, late charges, property inspection fees, property valuation fees and other charges and advances that were not authorized by or in conformity with the terms of the subject mortgage and note. Defendants wrongfully added these illegal charges to plaintiff's payments of the monthly mortgage fee to ensure plaintiff was behind at all times.

78. Defendants failed to provide Plaintiff with legitimate and non predatory access to the debt management and relief that was to be made to Plaintiff pursuant to and in accordance with the PSA (Exhibit 15) that controls and applies to the subject mortgage loan. Defendant's non-compliance with the condition precedents pursuant PSA is an actionable event on a failure of a contractual and or equitable condition precedent. Defendants were not legally able to foreclose until they demonstrated compliance pursuant to the mortgage and PSA that governs the subject mortgage and note.

79. Defendants are not entitled to dismissal as they failed to accept short sale offers proposed by or on behalf of plaintiff. Defendants otherwise failed to mitigate its damages by other factors to be revealed through discovery.

80. Plaintiff's Loan was identified in CWABS Inc., Asset-Backed Certificates, Series 2004-7 with the Master Servicer being Countrywide Home Loans Servicing LP, the Sponsor / Seller being Countrywide Home Loans and the Depositor being CWABS, Inc (Exhibit 15).

81. The basis of the identification of Plaintiff's Loan in CWABS Inc., Asset-Backed Certificates, Series 2004-7 was based on the following factors/information from "CWABS Inc., Asset-Backed Certificates, Series 2004-7 – Loans" that corresponds exactly with Plaintiffs loan documents provided: Original Amount: \$274,550.00; Location of Property: Massachusetts; Property Type: Single Family Residence; Zip Code: 02072.

82. Plaintiff's note was split apart or fractionalized, as separate accounting entities and deposited separately into Classes, each class is insured up to 30 times the face value of each note therein, which is permissible under the Federal Reserve System.

83. All defendants misrepresented plaintiff's debt and or their conduct was unfair and deceptive. These defendants have signed plaintiffs AOMs or represented to the court that, the documents that transfer ownership of plaintiff's mortgage and or note were valid and or legal which was not legal and was invalid.

84. All defendants also participated in the Civil Conspiracy by signing and preparing documents and or representing in court that the documents were accurate, truthful and they were dependant on fraudulent documents to be mailed.

85. All defendants also have signed or helped create assignments of mortgages, or have attested to affidavits and or have signed documents and or represented defendants BONY and or BOA in court to collect a debt to defraud plaintiff of money and his property.

86. Defendants GWP and ABLITT and or employees or agents all participated in the Civil conspiracy to defraud plaintiff of money or property and misrepresented plaintiffs debt and their conduct was unfair and deceptive.

87. All defendants regularly collect debts and or assist in collecting debts.

88. Defendants AMC,BOA (formally Countrywide), and BONY and/or ABLITT and/or GWP, the lack of standing to foreclose and capacity that the defendants had in 2006 cannot be repaired afterwards,

plaintiff has been damaged by the fraudulent foreclosure, plaintiff needs to be made whole again by getting relief from defendants.

89. Defendants AMC, and BONY only securitized investor's money and did not securitize the mortgage or notes.

90. Defendants AMC and BONY securitized CWABS, Inc., Asset-Backed Certificates, Series 2004-7 improperly.

91. Defendants AMC, BONY, BOA, and Optima Mortgage have breached their contract with plaintiff.

92. Optima Mortgage used unfair and deceptive trade practices by insuring plaintiff's home when Optima Mortgage had no more interest in plaintiff's home. Pursuant to the Pooling and Service Agreement the mortgage file and note was sold and securitized in the pool (CWABS) on or about September 28, 2004 Optima Mortgage insured plaintiffs home in 2005 (see attached policy) which was part of the Civil Conspiracy to defraud plaintiff of money and property.

93. Defendants BOA, and their agents or employees under the applicable law, any "servicer" which acquires a bad debt, such as one in foreclosure or default, is deemed a "debt collector."If any defendant disputes this identity it must set forth clear and convincing evidence to the contrary.

94. Further, whether a party is a "debt collector" under the relevant statutes is determined through the amount of debt collecting the party performs in comparison to the servicing by the party. A significant portion of defendants BOA and BONY business, through robo-signors such as Tiffany Skaife and or Sandra J. Robinson is "debt collectors". This is especially true when considering the failure rate of the loans they initiate collection processes on (which originated from a third party).

95. Sandra J. Robinson, Bernadette Hughes, Kathy Repka, Jorge Vargas, Krista Edwards are Notaries that have notarized Plaintiffs AOMs and or documents have all ignored Plaintiffs written requests for copies of the certified assignments of mortgages (AOM) that they notarized. Plaintiff mailed several requests for the certified AOM to different addresses and received correspondence from BOA returning all money orders and checks this is a violation of MGL 93a and the FDCPA defendant did not mail request to BOA so why are they answering plaintiff's request.

96. Sandra j. Robinson and Krista Edwards is a Notary Public that notarized plaintiffs AOM, plaintiff wrote request to Krista Edwards to receive a certified copy of his AOM, BOA sent plaintiff his checks and request back stating they don't except checks, so plaintiff sent money orders and they were sent back as well, plaintiff mailed a money order for the fifth time to Krista Edwards and it came back return to sender unopened Defendant has violated the MGL 93a Unfair and Deceptive Trade Practices Act.

97. Defendants Sandra J. Robinson, Tiffany Skaife, Melissa Flanagan, Mark Bishop, M. Michie Kelly and Amanda Farrar signs as different officers of different financial companies on a regular basis and are nothing more than Robo-Signers they have violated MGL 93a Unfair and Deceptive Trade Practices Act and the FDCPA.

98. Defendants Sandra J. Robinson, Mellissa Flanagan and also these notaries that I list here have conspired to defraud Plaintiff of money and property. None of the defendants submitted their notary journals at the end of their notary terms to the Collins County Clerk, which is in violation of Texas notary laws 1. Jorge Vargas 2. Bernadette G. Hughes 3. Kathy Repka 4. Krista Garza 5. Jorge Vargas, see EXIHIBIT 12 letter from the Texas Collins County Clerk's Office stating that she does not have their notary logs.

99. Upon information and belief Sandra J. Robinson is a fraud, she notarized the AOM when she was employed by Countrywide and BOA at the age of approximately 68 years old, plaintiff believes she has never worked for BOA.

100. Sandra J. Robinson has never answered request from plaintiff and BOA human resources state that there is no one by that name that works there in the Texas branch.

101. Plaintiff's mortgage was approximately $1900 on June 24, 2004 and jumped to $2900 a year (12 months) later on July 24, 2005. Through miscalculation, plaintiff had a two (2) year adjustable rate mortgage.

102. Plaintiff was charge approximately over $7500.00 for forced place insurance while he had his own policy in place by BOA. The Plaintiff and his insurance agent had faxed several copies of the policy to BOA on several occasions from the insurance agent's office. Each time BOA claims they didn't receive proof of insurance days later.

103. Defendant BOA miscalculated Plaintiff's mortgage and escrow payments. Plaintiff relied on information received from Defendant BOA to his detriment.

104. Plaintiff filed for Chapter 13 Bankruptcy protection on or about February 7, 2007(case# 07-10729-JNF).

105. Plaintiff tried to send B.O.A approximately $6900.00 for arrears by money orders or certified checks through his Attorney John F. Cullin, but payments were sent back (refused) on or about March 1, 2007.

106. Plaintiff sent several Qualified Written Requests to Defendants: BOA, and BONY. Plaintiff received correspondence from BOA on or about September 30, 2012 over two (2) and Half months later.

107. Defendant Optima Mortgage never sold or transferred plaintiff's mortgage and or note by the closing date of the pool and clearly broke some rules of the PSA. Defendant Optima Mortgage used unfair and deceptive acts, violated FDCPA, Civil Conspiracy and the mortgage contract.

108. Legally, the shareholders of the REMIC are the real and beneficial party of interest. The thousands of shareholders each own a tiny piece of Plaintiff promissory note.

109. On or about May 17, 2007, B.O.A, through their attorney's ABLITT and their agents filed (EXHIBIT 4) its first (1st) Motion from Relief from Stay (MFRFS) in the Boston Massachusetts Federal Bankruptcy Court (BKC). On or about May 17, 2007, the MFRFS represented that B.O.A (formally Countrywide Home loans, Inc.) was the holder of the Plaintiff's home mortgage. All notices of default and acceleration were from BOA to the Plaintiff. Plaintiff relied on this information to his detriment that BOA was the owner of the mortgage. Plaintiff added BOA as a creditor in BKC when I filed the Chapter 13 Bankruptcy and BOA did not object.

110. B.O.A through their attorney ABLTT and their employees and or agents filed the 1st MFRFS (attached case# 07-10729-JNF) and it falsely stated that Countrywide was the mortgage holder signed by Deirdre Cavanaugh a clear violation of MGL 93a and the FDCPA misrepresentation of the character of the debt and FDCPA 1692e(10) Any false representation or deceptive means to collect a debt or obtain information about a consumer, 1692e(5) Threaten to take any action that cannot legally be taken or that is not intended to be taken .

111. BOA (formally Countrywide) initiated foreclosure proceedings with invalid notices and submitted fraudulent documentation to the bankruptcy court stating that Countrywide was the holder of plaintiff's mortgage which is a violation of Unfair and Deceptive Trade Practices Act and the FDCPA and then

withdrew the motion and never conducted condition precedent from BONY to plaintiff so the sale is invalid according to Massachusetts Law and also the foreclosure suffered from fatal procedural defects.

112. B.O.A first MFRFS stated, that as of May 11, 2007 Plaintiff owed Countrywide approximately $304,800.90 under the terms and conditions of the note and mortgage, the fair market value (fmv) was $355,000.00, and the liquidated value calculated at 70% of the (fmv) was $248,500.00. The MFRFS stated the Plaintiff had equity in the property, and that the Plaintiff is due one (1) March payment of $3,340.00 and two (2) months April and May's payments of $3,281.47 totaling $9,903.31, plus $198.00 for Property Inspection fee, $1,125.00 for foreclosure Attorney fees, $4,814.30 for Foreclosure cost, $364.87 for Miscellaneous fees Totaling $6,502.17 and attorney fees of $800.00 a clear miscalculation of plaintiffs debt this is a violation of the FDCPA and MGL 93a.

113. The MFRFS also stated that the total post-petition fees as of May 11, 2007 were $17,205.48 and the movant anticipates the post petition arrearage by the time of the hearing will be $20,486.95, which is a clear miscalculation.

114. BOA through their attorneys ABLITT and employees filed a motion to withdraw movants first (1) MFRFS and it was granted (EXHIBIT 4) on June 1, 2007 in the BKC.

115. On or about August 8, 2007, ABLITT and employees filed a second MFRFS (EXHIBIT 5) signed by Rachel D. Costa. This time they claimed BONY trust was now the holder of Plaintiffs said Mortgage and note. Plaintiff was never sent new notices or acceleration with BONY as the mortgage and note owner. Attached is an assignment of mortgage with the notary date of November 20, 2006 (EXHIBIT 5) and no date of execution. This assignment is dated over 2 years after the pool is closed pursuant to the PSA (EXIHIBIT 13).

116. Defendants AMC and BONY, through their attorney ABLITT filed an assignment of mortgage in the Motion From Relief From Stay in the federal Bankruptcy court (EXIHIBIT 5) and never filed it in the Registry of Deeds, although ABLITT assured Judge Feeney in the Bankruptcy court that they would file the AOM forthwith but hired Tiffany Skaife and BOA employees and or agents to create a new

Assignment of Mortgage (EXHIBIT 2) and which she did through her Title Curative company (EXIHIBIT 14) that she works for a violation of MGL 93a.

117. If the AOMs were valid, AMC and BONY would have been defrauding the investors that have put up funds for all the mortgages and notes in the pool. According to the prospectus and all Security and Exchange Commission's (SEC) filings and the PSA, plaintiff's mortgage was supposed to have been deposited in the pool on or about September 28, 2004. This is a clear violation of REMIC status that the IRS granted the REMIC trust.

118. The first Assignment of Mortgage was executed on 11/20/2006; the complaint to foreclosure mortgage is dated 11/06/2006. This assignment of mortgage was dated 14 days after the foreclosure was filed in the Massachusetts Land Court. According to BONY's own PSA, The Mortgage was purportedly assigned to BONY two (2) weeks after the foreclosure had been filed in land court and over 2 years after the Trust had closed on or about September 28,2004.

119. Defendant Amanda Farrar signed the 1st AOM as Assistant Vice President for MERS, Inc as a nominee for Optima Mortgage Corporation that was notarized on 11/20/2006.

120. Defendant Amanda Farrar is on the so-called Robo-signer list from www.foreclosurehamlet.com. Amanda Farrar has also signed documents as Vice President of U.S Bank National Association for CWMBS Inc Trust. It is mentioned on the Robo-signer list that Farrar is an employee of Countrywide/Bank of America violation of MGL 93a and the FDCPA.

121. Defendant Amanda Farrar is a robo signer on April 13,2007 she signed as two (2) different officers, as Vice President of U.S Bank National Association for the benefit of the Certificate Holders CWMBS, Inc. Reperfoming Loan Remic Trust Certificates, Series 2005-R3 and as Vice President of Bank of New York as Trustee for the CertificateHolders CWABS II, Inc.LFT 2005-04 also on October 28,2005 she signed as Vice President of Countrywide Home Loans Inc. a New York Corporation doing business as Americas Wholesale Lenders and on November 7,2006 she signed as Assistant Vice President of Countrywide Home Loans,Inc see attached EXHIBIT 15 this is Cleary robo- signing and Civil Conspiracy on a grand scale.

122. Defendant Amanda Farrar's Assignment of Mortgage is indicative of a robo-signed document. The mortgage is signed from an officer of MERS Inc. (EXHIBIT 2) The signer works for another company, not MERS, Inc. Other indications that this document is robo-signed is the illegible notary signature, the signer has signed for other entities (in the witness whereof statement), the date is missing, names are stamped in block letters, and the assignment purports to transfer the mortgage and note from MERS to the trust. This is a clear violation of MERS rules and the PSA.

123. Defendant Amanda Farrar has worked for Countrywide and or Bank of America and has conspired to defraud plaintiff of money and property and is nothing more than a Robo Signer.

124. Defendants ABLITT and GWP created either a written policy or an unwritten policy and a pattern of practice wherein its attorney's and or agents and or employees would be negatively affected if the attorneys or agents refused to sign documents, merely because of fraudulent assignments or false documents, and or notices of default and acceleration. Defendant Deirdre Cavanaugh and any and all employees of ABLITTS did not want their employment to be negatively affected, so they went along with the acts of breaking State and Federal law.

125. Inspection of the documents shows there are no actual assignments, but rather a bad attempt to make it look like there was valid assignments on November 20, 2006 and January 25, 2008. The November assignment was signed by Amanda Farrar and Melissa Flanagan, the January assignment was signed by Tiffany Skaife and Paula Meyers and notarized by Sandra J. Robinson.

126. Defendants Tiffany Skaife and witness Paula Meyers signed and help create a second (2$^{nd)}$ assignment that had a date of October 10, 2006, nearly two (2) years after the trust had closed. The 2nd assignment also had a crossed out notary date of 10/10/2006 with a written in notary date of 01/25/2008 notarized by Sandra J. Robinson. This is a clear violation of the PSA because the trust was already closed on September 28, 2004 the AOM is invalid because a notary cannot notarize a document over Fifth teen Months later, and it takes affect over Fifth teen months earlier this is a clear case of back dating, this AOM was mage specifically for Plaintiffs file this is no doubt Civil Conspiracy.

127. The plaintiffs' own securitization documents required mortgage assignments to be made to the plaintiffs in recordable form for each and every loan at the time the plaintiffs acquired them. Surely, compliance with this requirement would (and certainly should) have been a priority for an entity issuing securities dependent on recoveries from loans, such as these, known from the start to have a higher than normal risk of delinquency and default.

128. Defendants Mark Bishop, Melissa Flanagan and Michie M. Kelly has signed other document using other titles of financial Institutions and are on the Southern Essex Registry of Deeds Robo-Signers list, and are nothing but known Robo- Signers, affidavit of Register Obrien is attached Exhibit 10.

129. Defendant M.Kelly Michie was not the Vice President of BONY Trust 2004-7, when he signed Plaintiffs Foreclosure Deed By Corporation and has never worked for Bank of New York he is a robo signer.

130. Defendant M.Kelly Michie has signed as 1st Vice President of BONY and 1st Vice President of American Wholesale lenders,1st Vice President of Mortgage Electronics Registration Systems Inc (MERS).,Vice President of MERS, 1st Vice President of Bank of New York as trustee for the Certificateholders of CWMBS series 2004-R1, 1st Vice President Bank of New York as trustee for the Certificateholders of CWMBS series 2004-R2 and 1st vice President of Bank of New York as trustee for the Certificateholders of CWABS series 2004-7 these are just a few of fraudulent documents that M.Kelly Michie has signed as different officers of Corporation see EXHIBIT 11.

131. Defendant Mark Bishop was not first (1st) Vice President of MERS as he claims he was when he signed the Confirmatory Assignment of Mortgage on or about January 10, 2008.

132. Defendant Amanda Farrar was not Assistant Vice President of MERS when she signed the AOM that was given to the BKC as proof of ownership of Plaintiffs property.

133. An individual who falsely claims to be a bank officer that is, who acts without the authorization of the bank commits fraud. Because mortgage assignments are sent repeatedly through the U.S. Mail, the fraud becomes the federal offense of mail fraud. If a bank has actually authorized nonemployees to use the title of Vice President of the bank on mortgage assignments, other issues arise. Banks are highly regulated, as are bank relations with affiliated companies.

134. In thousands of foreclosure cases, key documents may have been fabricated by employees of mortgage servicing companies who have falsely held themselves out as bank officers. Because most foreclosures are the result of defaults, the validity of these assignments has most often gone unchallenged. Almost three million U.S. properties were involved in some form of foreclosure action in 2009, a 44% increase from the end of 2008 to the end of 2009. In 2010, the issue of the validity of Assignment is likely to finally come under examination by regulators, courts, lawyers and distressed homeowners

135. It seems they forgot all about the first two assignments because once again it is an assignment from MERS to the same trust. This assignment was also prepared for BONY through their attorney ABLITT and or employees and or agents. If the first assignment was effective, of course, MERS had nothing to convey. Plaintiff also had two (2) blank assignments in his closing package.

136. Upon information and belief none of the Defendants where appointed as a MERS officer when they signed any of the AOMs.

137. All AOMs are void due to the fact that Defendants were not MERS members at the time they signed and Sandra J. Robinsons signature is a fraud and Tiffany Skaife had no authority to sign on or about October 10, 2006 as Assistant Secretary of MERS on plaintiffs AOM and Plaintiff believe Notary Sandra J. Robinson is a fraud she would have been approximately 70 years old when she notarized Plaintiffs AOM, BOA does not employ individuals that age.

138. Upon information and belief Defendants AMC and BONY, through their attorney ABLITT submitted documents created by robo signers purporting to work for the bank who were actually employed by BOA (formally Countrywide) which is the loan servicer of plaintiff mortgage.

139. Defendants AMC, BONY, ABLITT, and GWP were under an affirmative duty to make a reasonable investigation of the facts to determine whether or not the assignments of mortgages were true or false and or that all the PSA's strict rules were followed. This was crucial in protecting the IRS tax status of the REMIC.

140. Defendants ABLITT and GWP and their employees, as Massachusetts licensed attorneys, were also under an affirmative duty to ensure that proper policy and procedures were in place to permit their

attorneys to exercise discretion to reject pleadings and Assignments of Mortgages that impaired candor to the tribunal and parties and to send plaintiff new notices and acceleration of mortgage from BONY when defendants switched owners in the middle of plaintiffs Bankruptcy.

141. Defendants MERS is assigning Plaintiffs mortgage with certain note(s) from Mortgage Electronic Registration Systems, Inc as nominee, P.O. Box 2026, Flint, MI 48501-2026 to BONY which is violation of the PSA and M.G.L 93a Unfair and Deceptive Trade Practices.

142. Defendants MERS, Inc. further indicates that they never have beneficial interest in mortgage notes. They state, "That it has no rights whatsoever for creating or transferring beneficial interest in the mortgage loans." Therefore, they have broken their own rules and violated MGL 93a.

143. Defendant BONY trust **filed with the SEC form15D, Certification and Notice of Termination of Registration on January 27, 2005**, signed by Defendant Leon Daniels.

144. Defendants AMC and BONY was **prohibited** from acquiring or attempting to acquire any interest or security on January 27, 2005. Since the Mortgage file was not transferred to the Trustee before January 27, 2005, it could no longer be done violation of SEC Rules.

145. Defendants AMC and BONY's own Pooling & Servicing Agreement (PSA) states, that if a transfer is done after the closing date of the trust it is void as a matter of law. They have violated their own PSA Law.

146. Carl Miller and defendant Mark Bishop signed Affidavits and had no firsthand knowledge of plaintiffs account violation of 93a Unfair and deceptive Trade Practices.

147. Defendants AMC,PC, LD,SW,BONY and BOA do not have a complete chain of assignments , the PSA, and the Massachusetts Supreme Courts have stated needs to be done.

148. Defendants LD, AMC, PC, SW, BONY and BOA through their attorneys ABLITT on their second (2nd) MFRFS, approximately 80 days later, as of July 27, 2007 stated the total amount of the secured encumbrances on the property is approximately $311,019.38 on the mortgage, the fair market value (fmv) was $335,000.00 and the liquidated value of the property deducting reasonable and necessary expenses from the FMV yields $306,912.40 a clear miscalculation this is called equity striping.

149. BONY through their attorneys ABLITT on their second (2nd) MFRFS included the following: Realtors fees at **\$20,100,** tax deed stamp \$1,527.60; anticipated closing cost \$750.00, Eviction proceedings \$710.00, estimated foreclosure fees and cost \$5,000. Total value of \$306,912.40.

150. BONY through their attorneys ABLITT and employees misrepresented the Fair Market Value of Plaintiff's property, fees and alleged debt as of August 8, 2007, in the MFRFS it filed in BKC.

151. Defendants BONY,BOA and employees or agents and Tiffany Skaife and Sandra J. Robinson created a second Assignment of Mortgage (AOM) (EXHIBIT 2) that was recorded January 25, 2008. This AOM has inconsistent content which raises tangible questions of fact, as to the true Assignee of the Mortgage. An assignment had already been done and was produced to the Bankruptcy judge in 2006 and was promised to be filed forthwith, but was never filed in the Norfolk Registry of deeds.

152. Defendants MERS does not have a beneficial interest in the note nor does it receive any income from the payments. In addition, MERS never acquires physical possession of the note. MERS corporate officers and authorized signers are actually employees for member companies. They are customer service reps, paralegals and foreclosure attorneys employed by other companies. MERS sells its corporate seal to non employees on its internet web page for \$25.00 each. MERS, Inc. does not have any of its own employees but claims to have "thousands" of assistant secretaries and vice presidents. Often it is an employee of the servicer signing the assignment in the name of MERS.

153. Only the holder of the promissory note is entitled to enforce the note and/or any lien which secured the debt.

154. MERS created two (2) assignments on plaintiff's property. No assignment reflecting either of these transfers was ever registered with the registry of deeds until on or after the foreclosure, February 25,2008 which is in violation of G. L. e.185, § 67. I 72. Accordingly, on at least two occasions, MERS and/or its member, failed to register transfers of the beneficial interest in the mortgage of 572 Park Street, Stoughton, Ma 02072 in violation of G. L. c, 185, § 67.

155. In the MERS agreements with the member company, the member agrees that the MERS System is not a vehicle for creating or transferring beneficial interest in mortgage loans. MERS has stated that its sole

purpose is as a system to track mortgages. The lenders and servicers do the entries themselves on the MERS website. MERS has no standing to commence any legal actions relating to peoples properties because they do not hold any legal or equitable interest in the debt or in the properties.

156. Defendant PC, LD, SW, AMC and BONY through their Attorneys ABLITT in their second (2nd) MFRFS misrepresented to the court that Plaintiff has no equity in the property eight months earlier Plaintiff had equity according to the 1st MFRFS.

157. Defendant AMC and BONY through their attorney ABLITT, MFRFS was granted with no objection from Plaintiff Lawyer Mr. John F. Cullin (Cullin).

158. Plaintiff was not at the MFRFS hearing on or about August 8, 2007at the Federal Bankruptcy Court.

159. Defendants PC, LD, SW, AMC, BONY and through their attorneys ABLITT and their employees misrepresented the amount of debt owed and used unfair and deceptive acts to collect a defaulted debt and property from Plaintiff.

160. Defendant Tiffany Skaife signed Plaintiff's second ($2^{nd)}$ AOM and worked as R.E.O closing manager title and escrow for Countrywide Home Loans. Skaife also works for several title curative companies and is in the business of producing missing documents, mainly assignments of mortgages for several financial institutions.

161. Defendant Tiffany Skaife engages in self dealing by wearing several corporate hats (EXHIBIT 14), and by signing as different officers of different Institutions. This is a sign that she is a robo signer.

162. Plaintiff believes that there was fraud between all defendants by way of the creation of the AOM and signing documents as officers of Corporations that they were not part of at the time they signed documents.

163. Upon information and belief Sandra J. Robinson, Mark Bishop, Amanda Farrar, Kathy Repka, Carl Miller, Krista Edwards, M. Kelly Michie Melissa Flanagan are officers or employees of B.O.A. Defendants are individuals that have notarized hundreds if not thousands of Assignments of Mortgages that were needed in litigation, or sign affidavits years after the trust has closed.

164. Defendants BOA through their writings have claimed that Sandra J. Robinson has worked for Countrywide Home Loans and B.O.A up until she was at least 74 years old and that she still works for them, BOA answered plaintiffs request for certified entries of Sandra J. Robinson notary logs in September of 2012 this is and was Unfair and Deceptive Trade Practices a violation of MGL 93a plaintiff did not realize Sandra j. Robinson and BOA shared the same address until plaintiff studied the documents.

165. Some or all of the Defendants used or are robo signers. This gave the appearance that there was a legal foreclosure going on. All the while the defendants continued to break State and Federal laws.

166. Defendants BONY through their attorneys ABLITT and employees and or agents held a foreclosure auction on Plaintiff's home on or about December 3, 2007.

167. Plaintiff had a witness come to auction named Carroll M. Lowenstein and attorney John Cullen to witness BONY, and auctioneers unfair and deceptive conduct.

168. Plaintiff and his attorney Cullen stated (Warned) at separate times during the auction that ABLITT, BONY and the auctioneer were violating the law. Plaintiff stated that BONY is not the holder in due course and there is no AOM on file at the Norfolk Registry of Deeds.

169. Defendant BONY and auctioneer proceeded and purchased plaintiff's home at the auction.

170. The first (1st Assignment had already been given to BKC in the MFRFS hearing on or about August 8, 2007 with the intent to confuse the judge into believing that BONY was the holder in due course the AOM was created just for the MFRFS hearing in the Federal Bankruptcy Court.

171. Upon information and belief Defendant Sandra J. Robinson's signature is forged on the AOM dated January 25, 2008. Sandra J. Robinson did not notarize or sign the AOM, and was not present on January 25, 2008 when the AOM was reportedly signed and notarized. It is a forged document.

172. Defendants BONY, ABLITT, Tiffany Skaife, had no idea in 2006 that there would be a day when the plaintiff would ever investigate the notary on the AOM or that robo signing would be a word familiar with the courts or that the courts would ever believe that a billion dollar institution would ever be questioned regarding rob signing, procedures and fraud in a foreclosure case so the defendants were very sloppy with their Civil Conspiracy and fraud.

173. Defendant Sandra J. Robinson's business address on her notary application is the same as BOA, which is 7105 corporate drive, Plano, Texas 75024-1319. Upon information and belief plaintiff believes someone posed as Sandra J. Robinson on March 15, 2007 and renewed her notary license after 17 years of not renewing it with the Texas Secretary of State's office.

174. I Paul Jones Plaintiff have spoken with Mary Collins the Clerk in Texas Collins County Court and she told me that Sandra J. Robinsons notary logs have not been turned in to her office as they should have been at the end of her term and that it is Texas Notary Law, and that is very unusual and that she is not surprise if in fact fraud is involved.

175. Alleged defendant Sandra J. Robinson's first (1st) notary term was from March 24, 1982 and ended on March 24, 1986; her second (2nd) notary term was from March 24, 1986 and ended on March 24, 1990; her third (3rd) term was from March 15, 2007 (17 years without being a notary) and ended on March 15, 2011. All of the entries in her notary log are public information.

176. Alleged defendant Sandra J. Robinson has notarized hundreds if not thousands of documents for Tiffany Skaife these documents were used to foreclose on families homes.

177. Defendant Mark Bishop signs documents as an officer of Citywide Mortgage and as an officer of Americas Wholesale Lenders. He has violated the FDCPA by attempting to act as a debt collector for defendants L D, AMC, PC, SW, BOA, and BONY by assisting to help collect a debt Defendant Mark Bishop, Melissa Flanagan and Jorge Vargas are debt collectors within the meaning of 15 USC 1692a (6).

178. Defendant Mark Bishop signed the Confirmatory Assignment of Mortgage and Jorge Vargas notarized it dated (EXHIBIT 2) October 21, 2008 but effective as of October 10, 2006 (Back Dated) as 1st Vice President of Mortgage Electronic registration Systems and was filed in the Norfolk Registry of deeds on November 21, 2008. Melissa Flanagan signed as a witness and Jorge Vargas notarized it all Three (3) of these individuals are employees of BOA and Melissa Flanagan and Mark Bishop are known robo- signers. Plaintiff believes this is a conflict of interest, Plaintiff has affidavit from Essex Registry of Deeds Mr. John L. Obrien(EXHIBIT 10) that these individuals (M. Kelly Michie, Melissa Flanagan and Mark Bishop) are known Robo- Signers and he refuses to have any documents with their signature on it, filed in

the Southern Essex Registry of Deeds unless there is an affidavit swearing under pains and penalty that documents are true, since he has incorporated this method no Bank or Lawyer has signed a verified Affidavit with these individuals signature on it.

179. Plaintiff alleges that all defendants intentionally acted in concert and in furtherance of the conspiracy to defraud Plaintiff of his m o n e y   a n d / o r  property when they knew that they lacked the legal right to do so which is an Act of Unfair and Deceptive Trade Practices, Common Law Fraud, violation of FDCPA and Civil Conspiracy and more.

180. Plaintiff advised Defendants AMC, MERS, BONY, GWP and ABLITT by mail that the foreclosure case was clearly based on a fraudulent assignment of mortgage and that the plaintiff demanded corrective action be taken and the debt be verified pursuant to the Federal Fair Debt Collection Practices Act in September 2012.

181. Upon belief and information Sandra J Robinson is a fraud. I believe someone is masquerading as her and is perpetrating a fraud. Someone has used Sandra J. Robinson's name to defraud hundreds if not thousands of individuals out of money and or property by using a bogus notary stamp. A stamp that was applied for by someone other than Sandra J. Robinson upon information and belief Tiffany Skaife was in charge of Title Curative process she knows and was there when the alleged person signed the AOM as Sandra J. Robinson.

182. Defendants PC, LD, SW, AMC, BOA, ABLITT, GWP and BONY intentionally failed to take corrective action to remove the false Assignments of mortgage f r o m  the court record. They have failed to advise the court and parties of the false nature of the AOM out of fear that their employment would be negatively affected. In addition, AMC feared that the several pools she oversees would lose its special IRS exempt tax status, thus making the entire trust void. The defendants feared that they would be liable for law suits from the investors and the home owners. They have violated the MGL 3a Unfair and Deceptive Trade Practices Act and the FDCPA U.S.C 1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (FDCPA).

183. Defendants PC, LD, SW, AMC, and BONY through their attorneys ABLITT filed a Complaint to foreclose on November 6, 2006 in the Massachusetts Land Court without having a valid assignment filed in the Norfolk Registry of Deeds.

184. Defendants ABLITT and GWP knew or should have known that there was no way that an AOM dated 10/10/06 or 11/20/06 after the closing date of the Pool could be valid. As lawyers for banks that foreclose they are familiar with the securitization process and know or should have known that it is fraudulent to represent any bank that acquires a note after the trust has closed. It is only valid if the bank has purchased the note as a 3rd party debt collector. Furthermore, they would be assisting in defrauding the investors as well.

185. Defendants AMC specifically issued a preliminary certification that she has all of the notes on the closing date (September 28, 2004) Countrywide filed the form from BONY, as trustee, that the trustees sections of Reg. AB were in compliance, including the pool assets and documents were safeguarded as required by the PSA" these Executives knew or should have known that they were falsifying documents and defrauding the investors as well as the plaintiff at the time these documents were signed, because Defendants PC, LD, SW,AMC did not have all the chain of assignments and notes in the pool as the PSA states must be done.

186. Defendants AMC, MERS, BOA, BONY, ABLITT & GWP obtained an unconscionable advantage by concealing, and/or misrepresenting the true owner of the beneficial interest in the subject loan, and/or the amount owed, and/or misrepresentation of good faith forbearance.

187. Defendants ABLITT, GWP and/or employees or agents, conspired to commit and did commit acts as follows: Common Law Fraud, civil conspiracy, creating a fraudulent AOM, filed untrue affidavits, misrepresented the truth at the plaintiff's August 11, 2008 eviction hearing and misrepresented the truth at Dedham District Court which was Unfair and Deceptive Trade Practices MGL 93a.

188. Upon information and belief none of the Defendants are registered to collect debts in Massachusetts this is a criminal violation of Massachusetts law.

189. Defendants AMC, MERS, BOA, Optima Mortgage, BONY, ABLITT & GWP were at all times, material hereto agent and/or apparent/ostensible agent of the other. Each defendant is engaged in some aspect of the mortgage industry and has, together, operated in concert as the facts relate to this case. Specifically, they operate and operated mortgage originating and mortgage servicing businesses that solicit, cater, and service millions of home loans annually, including debt collecting on alleged defaulted mortgages. Based on an understanding and belief, certain defendants and their agents, officers, affiliates, attorneys, and/or employees have operated as a common enterprise and in concert while engaging in the unlawful acts and practices alleged in this complaint. This includes the collection of alleged defaulted debts and Unfair and Deceptive Trade Practices MGL 93a, Civil Conspiracy, Abuse of Process, and violations of the FDCPA and the Federal Credit Reporting Act (FCRA).

190. In executing that duty, they are obligated to review all evidence presented by their clients to determine the merit of the case before filing foreclosure lawsuits. Further, by filing and/or prosecuting a foreclosure lawsuit based upon information provided by their clients, these attorneys are ratifying the veracity of its evidence in support of that lawsuit. They are presenting to the Court that their clients' actions as well as their own actions are meritorious.

191. Once these attorneys file a claim on behalf of a client, they are acting in concert with that client in collecting the purported debts. Misconduct on behalf of its clients, its members or agents and its employees is imputed to plaintiff's attorneys and vice versa.

192. In addition to joint and several liabilities for misconduct among joint tortfeasors, defendants have also operated as a common enterprise, and each of them is jointly and severally liable for the acts and practices alleged herein. No alleged owner of the beneficial interest in the subject promissory note and mortgage was a holder in due course. All references to defendants' "misrepresentations" are defined as fraudulent misrepresentations, reckless and wanton misrepresentations, and/or negligent misrepresentations, regardless of whether referred to as "misrepresentation" or "intentional misrepresentation" or "fraudulent misrepresentation," or any other characterization of the misrepresentation at issue.

193. It is Plaintiff's good faith belief that the Assignment of Mortgages was created by collusion between defendants BONY, BOA, and/or ABLITT, and/or Tiffany Skaife, and/or Countrywide Mortgage entity employees to support the claimed indebtedness and to support that there is "no genuine issue of material fact". In this case, it is the dates that the AOMs and affidavit were executed and notarized. All BOA, BONY, GWP, and ABITT's defendants played a role and conspired to defraud plaintiff out of money and or property by violating MGL 93a using Unfair and Deceptive Trade Practices and violating several counts of the FDCPA from inception of the foreclosure up until September 29, 2012 through their writings to the Courts and to plaintiff.

194. These defendants continued to intentionally mislead the court in an effort to unjustly enrich themselves in taking the plaintiff's money and property. They knew, or should have known, at the inception of their suit that BONY and/or BOA or its predecessors in interest has never owned the mortgage or note. It was merely, at best the trustee of the securitized pool of mortgages or acting as a debt collector or servicer when purchasing the defaulted mortgage and note at a discounted price after the trust was closed.

195. These acts as well as the prosecution of Plaintiff auction were, intentional, reckless, willful and wanton, negligent, deceptive, and predatory.

196. Defendants knew that they should not falsify documents, particularly sworn documents meant to prove a material fact such as AOMs & foreclosure documents. Any and all documents were submitted to Stoughton District Court, Dedham Superior Court, Norfolk Registry of Deeds, Massachusetts Federal Bankruptcy Court. These perjured documents violated several Massachusetts laws both state and federal.

197. As a result of the aforesaid FDCPA and M.G.L 93a violations, Plaintiff has been subjected to false and illegal collection activities. Plaintiff has therefore been harmed due to the slander to his credit and emotional/physical health issues proximately caused by these defendants. Plaintiff has retained counsel and is entitled to reimbursement of his costs and attorneys fees.

198. All defendants have conspired and or submitted documentation that clearly misrepresents the debt and was false and misleading representation in communications, documents threatened to take any legal action that

can't be legally taken or not intended to be taken, unfair and unconscionable means to collect the allege debt, deceptive means to collect a debt, violated the MGL 93and FDCPA.

199. Plaintiff will send notices of violation of 93a to all Massachusetts residents or companies so that they will have a chance to settle or rebut plaintiff's charges as the 93a law states. Plaintiff reserves the right to amend the pleadings to add all Massachusetts residences or companies later.

200. Since the Mortgage file was not transferred to the Trustee before September 28, 2004, it can no longer be done. The Chain of Title was clearly not followed, based upon the record. The Trust is clearly not in possession of the plaintiffs mortgage file, according to the commitment letter EXIBIT 7 from BOA to Optima Mortgage written in 2011 to purchase plaintiffs Mortgage and or Note, this letter is very damaging and it shows the fraud between these 2 Corporations and AMC, PC, SW and Leon Daniel, how could they be unaware that Optima Mortgage still has Plaintiff files.

201. Plaintiffs mortgage file, according to the Pooling and Servicing Agreement of the trust, should have been transferred to the trustee of the trust by the closing date of September 28, 2004 or shortly thereafter. The trust claimed to have had the mortgage file back in 2004. Based upon the documents reviewed, it could not be substantiated that the defendant in this case had the right to foreclose on plaintiff's property.

202. Defendants AMC,LD, PC, SW, ABITT, and BONY lacked authority to foreclose because the requirements of the PSA & New York Trust law and or Delaware trust Law were not followed.

203. Defendants AMC, LD, PC, SW, BONY and ABLITT did not have authority to foreclose because it had not established a validly assigned mortgage and note pursuant to the Pooling & Servicing Agreement of the trust. Therefore, BONY did not establish its standing to foreclose.

204. The bifurcation of the mortgage and note creates an immediate and fatal flaw in the title. The mortgage title was never officially transferred and there is no evidence that the mortgage loan was properly assigned a new holder-in-due-course. If such assignment did occur, plaintiff was never notified of it as he should have been according to federal TILA and RESPA law.

205. Plaintiff tried to mitigate with attorney MRB, but was told BONY was not interested in mitigating.

206. Defendant Tiffany Skaife is on the alleged take your home back robo signers list and she managed several title curative and closing teams in Dallas area servicing offices EXHIBIT 14.

207. Defendant Tiffany Skaife has signed as Assistant Secretary of MERS, and as Vice President of EMC Mortgage Corporation, and as Vice President of Bank of America EXHIBIT 14.

208. There was no evidence on October 10, 2006 or January 25, 2008 that Tiffany Skaife was given any authority to sign on behalf of MERS or Optima Mortgage when she signed plaintiffs AOM.

209. Defendant Tiffany Skaife is Vice President of Innovative Asset Management, and R.E.O closing manager at Mackie and Wolf Zientz Law Firm. This defendant is nothing more than a robo Signer EXHIBIT 14.

210. Carl Millers affidavit dated January 7, 2008 was not properly verified, he does not have firsthand knowledge of Plaintiff's Account.

211. Paula Meyers and Defendant Tiffany Skaife, and Sandra J. Robinson knew at the time of putting their alleged signatures on the assignment of mortgage date January 25, 2008 that it was a fraud and the trust had already closed on September 28, 2004 and Leon Daniels had already file FORM 15D and he and Defendants AMC, SW, and PC knew that they were not authorized to and were **prohibited** from acquiring or attempting to acquire any interest or security after January 27, 2005. Since the Mortgage file was not transferred to the Trustee before January 27, 2005, it could no longer be done this is a serious violation of SEC Rules.

212. After securitization, the note cannot be re-attached to the mortgage through adhesion.

213. Once the note was converted into a stock, or a stock equivalent, it is no longer a note. If both the note and the stock, or stock equivalent, exist at the same time, that is known as double dipping and is a form of securities fraud.

214. The Promissory note has been converted into a stock as a permanent fixture; it is now a stock and governed as a stock under the rules and regulations of the SEC.

215. The trustee is prohibited from acting ultra vires to transfer the subject mortgage loan into the trust after the closing date of September 28, 2004.

216. Because this statutory scheme allows the mortgage holder to exercise this extraordinary power without first obtaining judicial authorization, Massachusetts courts have consistently required that "one who sells under a power of sale must follow strictly its terms and if he fails to do so there is no valid execution of the power, and the sale is wholly void". Massachusetts Courts concluded that any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under the relevant statutes is void.

217. Defendants BONY violated Massachusetts law by not providing notice to the Plaintiff of the right to cure a default prior to accelerating the entire unpaid balance of the mortgage or otherwise enforcing the mortgage, including by exercising the power of sale, notices had been sent out under the name of Countrywide they withdrew the action (EXHIBIT 4) and BONY never performed the Conditions Precedents of sending out those notice under BONYs name.

218. Defendant  BONY violated Massachusetts law by not providing notice to the mortgagor at least fourteen days prior to the proposed date of sale, stating the redemption amount as of thirty days prior to the date of sale and identifying the present holder of the mortgage.

219. Defendants BONY and BOA violated one of the terms of the power of sale that must be strictly adhered to. The restriction on who is entitled to foreclose, the foreclosing entity, while purporting to be the holder of the mortgage, had in fact failed to obtain a valid, written assignment of the mortgage prior to commencing foreclosure proceedings. Countrywide acted as holder of the mortgage at the beginning of the foreclosure, then ABLITT switched Plaintiffs to BONY in the middle of foreclosure presiding.

220. Defendants BONY conducted foreclosures when they lacked the legal right to do so and misrepresented to the homeowners, their roles as mortgagees or as the holders of the mortgages. They repeatedly failed to strictly adhere to Massachusetts statutory requirements in conducting foreclosures, and knowingly foreclosed on mortgages secured by property within the Commonwealth even though they were neither the mortgagee, nor the holder of the mortgage, at the time they initiated foreclosure proceedings.

221. Furthermore, defendant BOA falsely identified themselves as the present holder of Plaintiffs mortgage throughout the foreclosure, at the Motion from Relief from Stay hearing, including in notices sent to the Plaintiff and in court filings including affidavits signed under the pains and penalties of perjury.

222. Accordingly, each foreclosure initiated or advanced by defendant BONY and BOA (In Federal Bankruptcy Court) when it was not the current holder of the mortgage was unlawful and is void. Such foreclosures are likewise void where defendant BONY and BOA falsely identified itself as the present holder of the mortgage in notices to the Plaintiff, court filings, or in published notices required under G. L. c. 244, § 1, and 50 U.S.C.A. §§ 521(b)(1) and 533(c). 30. Defendants' failures to secure a valid, written assignment of the et seq., G. L. c. 183, § 21, mortgage prior to initiating a foreclosure violates G. L. c. 244, § 1, ET sea, G. L. c. 183, § 21, and is unfair and deceptive in violation of G. L. c. 93A, § 2.

223. Defendants MERS, Optima Mortgage, BONY and BOA, and ABLITT's conduct has adversely affected the title to plaintiff's property. At some point prior to February 1, 2007, BOA filed a Motion from Relief from Stay. Defendant deceived plaintiff in the course of servicing the loan.

224. Defendant BOA started sending notices of default that stated they were the holder of plaintiff's mortgage, not BONY, around August 2006. They were not the holder at the time also BOA filed documents in the BKC (case #07-10729-JNF) on or about May 17, 2007 claiming it was the holder of plaintiffs mortgage. They were not the holder and as a result plaintiff has been damaged.

225. BOA claimed it needed plaintiff's taxes faxed and plaintiff did so several times for the modification program. Plaintiff was told several times that BOA didn't receive it.

226. Defendant BOA has engaged in deceptive practices with respect to the terms and requirements of its loan modification programs, the implementation of loan modifications, and the status of foreclosure proceedings. This deception has resulted in significant harm to plaintiff by way of default, and foreclosures.

227. In the course of implementing its loan modification programs, defendant BOA misled borrower about his eligibility for this program and the relief plaintiff would receive pursuant to this program.

228. On the BOA website, which states: "Let's work together; Help is available for homeowners experiencing payment difficulties? We'll do everything possible to come up with a solution to help you. No matter what your situation is, we're here to help;" is not true.

229. Upon information and belief, Defendants BOA have deceived plaintiff about loan modification requirements, by, without limitation, misrepresenting that: plaintiff must be over sixty days delinquent to get a loan modification. In fact actual delinquency is not required to get a loan modification. Borrowers may be eligible even if they are at simply at risk of imminent default. Such misrepresentations resulted in increased and unnecessary default. If borrowers are over ninety days delinquent they will receive priority treatment, which is false; and which results in unnecessary additional defaults and extended delinquencies. Certain borrowers cannot be considered based on the type or seasonal, nature of their income, when in fact such factors are not determinative of eligibility. This results in borrowers who otherwise may qualify for a loan modification being improperly denied or dissuaded from applying.

230. Defendants BOA (formally Countrywide) informed plaintiff that they have suspended the foreclosure while we prepare for the modification. Plaintiff realized BOA was still moving forward with the foreclosure because he received several more notice of default from Countrywide on or about 2006.

231. Defendant BOA stated to plaintiff after months of promising help with modification that Plaintiff was ineligible because plaintiff is a Home Improvement Contractor. Plaintiff's Home Improvement Contracting Business is seasonal.

232. Plaintiff believes BOA has purchased the note, under the terms of the Pooling & Servicing Agreements. The servicer can buy back the note as a non-performing non-secured debt similar to a collection agency that buys bad credit card debts. That would be a purchase of a discharged asset and cannot be re-adhered to the original mortgage. The original Note was a one-of-a-kind instrument, not part of a discharged asset, the purchaser of that discharged asset can never be the holder-in-due course of the original note.

233. The Note that was executed with the mortgage became part of a pool of mortgages losing its individual identity as a note between a lender and borrower. It then merged with other unknown notes as a total obligation due to the investors. Therefore, it is no longer a negotiable instrument, but collateral (stock) for a security as it pertains to Special Purpose Vehicle or MBS Mortgage Backed Security pool under a Common Law Trust structured as a REMIC (Real Estate Investment Mortgage Conduit).

234. There were no Assignments publicly recorded to show a complete chain of title from Originator to the Trustee as described in the Pooling and Servicing Agreement. The chain of Title of the Assignment of Mortgage does not comply with the terms required by the Pooling and Servicing Agreement to transfer the mortgage file to the Trust.

235. Plaintiff chain of title has been rendered unmarketable and fatally defective.

236. In order to clarify ownership of the note and mortgage as well as proper standing, the original note and mortgage with all allonges and assignments needs to be produced to the Courts and the plaintiff for inspection.

237. Defendants Annemarie Cassano (AC) as a trustee has failed to act in strict conformance with the trust, as well as the Pooling and Service Agreement.

238. The PSA only authorizes the trustee of BONY, Annemarie Cassano (AC), to accept mortgages from the depositor (CWABS, Inc). The trustee has no authority to accept a mortgage from anyone else, and she has not acted in strict conformance. Defendant Annemarie Cassano has accepted a mortgage from MERS a clear violation.

239. This trust is organized as a Special Purpose Vehicle ("SPV") and a Qualified Special Purpose Entity ("QSPE") which receives special tax treatment. The SPV is organized by the securitizer so that the assets of the SPV are shielded from the creditors of the securitizer and the parties who manage it. This shielding is described as making the assets "bankruptcy remote". To avoid double taxation of both the trust and the certificate holders, mortgages are held in Real Estate Mortgage Investment Conduits ("REMICS"). To qualify for the single taxable event, all interest in the mortgage is supposed to be transferred forward to the certificate holders. The legal basis of REMICs was established by the Tax Reform Act of 1986 (100 Stat. 2085, 26 U.S.C.A. §§ 47, 1042), which eliminated double taxation from these securities. The principal advantages of forming a REMIC for the sale of mortgage backed securities is that REMIC's are treated as pass-through vehicles for tax purposes helping avoid double-taxation.

240. For instance, in most mortgage-backed securitizations, the owner of a pool of mortgage loans (usually the Sponsor or Master Servicer) sells and transfers such loans to a QSPE, usually a trust, that is designed

specifically to qualify as a REMIC, and, simultaneously, the QSPE issues securities that are backed by cash flows generated from the transferred assets to investors in order to pay for the loans along with a certain return. If the special purpose entity, or the assets transferred, qualify as a REMIC, then any income of the QSPE is "passed through" and, therefore, not taxable until the income reaches the holders of the REMIC, also known as beneficiaries of the REMIC trust.

241. Accordingly, the trustee, the QSPE, and the other parties servicing the trust, have no legal or equitable interest in the securitized mortgages. Therefore, any servicer who alleges that they are, or that they have the right, or have been assigned the right, to claim that they are the agent for the holder of the note for purposes of standing to bring an action of foreclosure, are stating a legal impossibility. Any argument containing such an allegation would be a false assertion. Of course, that is exactly what the servicer of a securitized mortgage that is purported to be in default claims.

242. The same is the case when a lender makes that same claim. The party shown as "Lender" on the mortgage note was instrumental in the sale and issuance of the certificate to certificate holders, which means they knew that they were no longer the holder of the note. The QSPE is a weak repository and is not engaged in active management of the assets. So, a servicing agent is appointed. Moreover, all legal and equitable interest in the mortgages is required by the REMIC to be passed through to the certificate holders. Compliance with the REMIC and insulating the trust assets from creditors of third parties (who create or service the trust) leads to unilateral restructuring of the terms and conditions of the original note and mortgage.

243. The above fact, and the enormous implications of it, cannot be more emphatically stressed. A typical mortgage pool consists of anywhere from 2,000 to 5,000 loans. This represents millions of dollars in cash flow payments each month from a servicer (receiving payments from borrowers) to a REMIC (QSPE) with the cash flow "passing through", tax-free, to the trust (REMIC). Those proceeds are not taxed until received as income to the investors.

244. Only the investors have to pay taxes on the payments of mortgage interest received. The taxes a trust would have to pay on 30, 50, or 100 million dollars per year if this "pass through" taxation benefit didn't

exist would be substantial and it would, subsequently, lower the value of the certificates to the investors, the true beneficiaries of these trusts. Worse, what would be the case if a trust that was organized in September 2004 were found to have violated the REMIC guidelines outlined in the Internal Revenue Code? At $4 million per month in cash flow, there would arise over $200 million in income that would now be considered taxable. It is worth repeating that in order for one of these investment trusts to qualify for the "pass through" tax benefit of a REMIC (in other words, to be able to qualify to be able to be referred to as a REMIC). All legal and equitable interest in the mortgages held in the name of the trust are vested in the investors not in anyone else at any time.

245. *If legal and/or equitable interest in the mortgages held in the name of the trust are claimed by anyone other than the investors, those that are making those claims are either defrauding the investors, or the homeowners & courts, or both.* So, if the trust, or a servicer, or a trustee, acting on behalf of the trust, is found to have violated the very strict REMIC guidelines (put in place in order to qualify as a REMIC), the "pass through" tax status of the REMIC can be revoked. This, of course, would be the equivalent of financial Armageddon for the trust and its investors. A REMIC can be structured as an entity (i.e., partnership, corporation, or trust) or simply as a segregated pool of assets, so long as the entity or pool meets certain requirements regarding the composition of assets and the nature of the investors' interests.

246. No tax is imposed at the REMIC level. To qualify as a REMIC, all of the interests in the REMIC must consist of one or more classes of "regular interests" and a single class of "residual interests."Regular interests can be issued in the form of debt, stock, partnership interests, or trust certificates, or any other form of securities, but must provide the holder the unconditional right to receive a specified principal amount and interest payments. REMIC regular interests are treated as debt for federal tax purposes. A residual interest in a REMIC, which is any REMIC interest other than a regular interest, is, on the other hand, taxable as an equity interest.

247. According to Section 860 of the Internal Revenue Code, in order for an investment entity to qualify as a REMIC, all steps in the "contribution" and transfer process(of the notes) must be true and complete sales between the parties and must be accomplished within the three month time limit from the date of "startup"

of the entity. Therefore, every transfer of the note(s) must be a true purchase and sale, and, consequently the note must be endorsed from one entity to another. Any mortgage note/asset identified for inclusion in an entity seeking a REMIC status must be sold into the entity within the three month time period calculated from the official startup day of the REMIC. Before securitization, the holder of an enforceable note has a financial responsibility for any possible losses that may occur arising from a possible default, which means that holder also, has the authority to take steps to avoid any such losses (the right to foreclose). Securitization, however, effectively severs any such financial responsibility for losses from the authority to incur or avoid those losses. With securitization the mortgage is converted into something different from what was originally represented to the homeowner. For one thing, since the party making the decision to foreclose does not actually hold any legal or equitable interest in any securitized mortgage, they have not realized any loss or damages resulting from the purported default. Therefore, it also follows that the foreclosing party avoids the liability which could result if a class of certificate holders claimed wrongful injury resulting from a modification made to achieve an alternate dispute resolution. Securitization also makes the mortgage and note unalienable.

248. The reason is simple: once certificates have been issued, the note cannot be transferred, sold or conveyed; at least not in the sense that such a transfer, sale, or conveyance should be considered lawful, legal, and legitimate. This is because the securitized note forever changes the nature of that instrument in an irreversible way, much in the same way that individual strawberries and individual bananas can never be extracted, in their "whole" form, from a strawberry banana milkshake once they've been dropped in the blender and the blending takes place It might appear that the inability to alienate the note has no adverse consequences for the debtor, but recent history disproves this notion.

249. Several legislative and executive efforts to pursue alternate dispute resolution and to provide financial relief to distressed homeowners have been thwarted by the inability of the United States government to buy securitized mortgages without purchasing most of the certificates issued. An SPV cannot sell any individual mortgage because individual mortgages are not held individually by the certificate holders; the

thousands of mortgages held in the name of the REMIC are owned collectively by the certificate holders. Likewise, the certificate holders cannot sell the mortgages.

250. All the certificate holders have are the securities, each of which can be publicly traded. The certificate holders are, in no sense, holders of any specific individual note and have no legal or beneficial interest in any specific individual note. The certificate holders do not each hold undivided fractional interests in a note which, added together, total 100%. The certificate holders also are not the assignees of one or more specific installment payments made pursuant to the note. For the certificate holder, there is no note. A certificate holder does not look to a specific note for their investment's income payment. Instead, the certificate holder holds a security similar to a bond with specific defined payments. The issuer of trust certificates is selling segments of cash flow. In order to more easily identify the parties and their relationship to the securitization arrangement, it is useful to view it in diagram form.

251. The parties to a securitization and their relationships to each other, including the duties and obligations one party owes to another party, is referred to on Wall Street as "The Deal". The Deal is created and defined by what functions as a declaration of trust, also known as "the master servicing and PSA the transferor purchases a portfolio of mortgages and sells them to a trust. The trust purchases the mortgages. The trustee holds the mortgages and becomes the holder of legal title. The trust then issues a bond to the investors; debenture-like certificates. The bond issues different classes of certificates, called tranches. The certificate entitles the certificate purchaser to certain stated, repeated segments of cash flow paid by the trust.

252. The certificate holders do not hold fractional, undivided interest in the mortgages. Instead, each tranche is entitled to an identified, segmented pool of money payable in an order of priority. A senior tranche will get paid before a junior tranche. A junior rate provides a higher promised rate of return because it has a higher risk than a senior tranche. Another tranche exists that pays interest, but does not pay out principal. The type and variety of tranche that is created is limited only by the limits of financial principal repaid on the mortgages but no interest, the investors buy the mortgages from the transferor by paying cash to the trustee who pays the transferor. The investors purchase securities (certificates) which are collateralized by

the mortgages held in trust in the collateral pool. Legal title to the mortgages is held by the trustee and beneficial title is owned by the investors there are many different structures for securitization.

253. We now know that an examination of the Master Servicing and PSA filed with the SEC will reveal substantial barriers to a lawful foreclosure. We also know that there are parties involved in this arrangement, as well as insurance products in place, intended to financially "cover" certain "losses" in certain situations, such as an alleged default. In light of this, there are a few questions the Sub-servicer and/or the Successor Trustee and/or the foreclosure law firm who claims to have the legal right and authority to conduct a foreclosure, ought to be prepared to answer before the foreclosure goes forward:

254. Defendants AMC is the trustee of Bank of New York and is guilty of Security frauds AMC is well learned of the New York and Delaware Trust Law, as well as, the Rules that govern the pools of mortgages called the Pooling and Servicing Agreement. She has turned a blind eye to all the fraud and is a participant as well. She is guilty of jeopardizing the pool of mortgages. This pool of mortgages has violated practically every rule in the PSA, several Trust laws, several SEC Laws and the special IRS Tax laws for REMICS. Defendants AMC is one of the reasons that the REMIC has failed.

255. Defendants AMC is the trustee of BONY and she if familiar with the Master Servicing and PSA and all the documents that was filed with the SEC relating to this mortgage. She is well aware of the consequences of violating these strict laws that govern the in CWABS 2004-7 Trust. Defendant AMC has violated the rules and regulations of the SEC and the PSA by accepting an AOM from MERS and she has full understanding of what she has done. This defendant has no respect for Federal or State Laws, PSA or the SEC laws.

256. Defendant AMC is trustee of BONY and knows if the investment trust that ostensibly owns the mortgage obligation is a REMIC. The trustee, the QSPE, and the other parties servicing the trust, have no legal or equitable interest in the securitized mortgages.

257. Defendants AMC knows any servicer or trustee who alleges that they have the right, or that they have been assigned the right, to claim that they are the agent for the holder or the owner of the note for purposes of standing to bring an action of foreclosure, are stating a legal impossibility.

258. Defendants PC, LD, SW, AMC, BONY, have defrauded the investors and have violated the REMIC Special IRS tax status by not forwarding all the interest forwarded to the investors. So, the investment entity is not a REMIC because it cannot qualify for a single taxable event as a pass through entity.

259. Defendants AMC, BONY, and BOA attorney ABLITT and GWP and employees and agents know that. Either that is the case, or the parties who state that they have a right to foreclose on a securitized note are not being truthful when they present themselves as the real party in interest. They cannot have it both ways. The servicer, trustee or anyone else cannot claim to hold legal and/or equitable interest in the mortgages held in the name of an investment trust that also provides the (REMIC) pass through tax benefit to its investors.

260. Defendants AMC and BONY, through their attorneys GWP and ABLITT and or employees or agents have been continually trying to collect the debt by going to court and trying to enforce that BONY is the holder in due course.

261. The Securities and Exchange Commission shows that BONY is a REMIC. The note has become unenforceable because the unnamed parties who are receiving the pre-tax income from the entity are the real parties in interest. They hold the legal and/or equitable interest in the mortgages held, but they do not have the ability to foreclose on any one individual mortgage. This is because the mortgages that are held by the REMIC have all been bundled into one big income-producing unit.

262. Enacted law and case law apply to each component of securitization. Specific enabling legislation to authorize the organization of a securitization and to harmonize the operation of these diverse components does not exist.

263. As it now stands, a lawful foreclosure cannot occur against a mortgage whose note has been securitized because of the lack of an actual damaged party who has standing to state a claim, the balanced owed on *plaintiff mortgage is unsecured debt*.

264. Plaintiff provided the income that funds the entire securitization and has no say in the matter because plaintiff was never told what will be done with the note. It is never disclosed in the transaction, the alleged debtor is never informed that the trust purchased the mortgages and sold certificates.

265. Plaintiffs note and mortgage have been bifurcated (taken separate paths) from Origination on June 22, 2004.

266. The Mortgage under Definitions (C) states that the MERS, Inc is the mortgagee under this Security Instrument, the Lender on the Note is Optima Mortgage Corporation, MERS, Inc is not a party to the note.

267. The note and mortgage are inseparable; the former as essential, the latter as an incident, and an assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity.

268. For the bank to be able to foreclose, they must first show a *perfection of chain of title, both in Mortgage and Note*, where the mortgage has transferred only the mortgage. The transaction is a nullity and his assignee having received no interest in the underlying debt or obligation, has a worthless piece of paper.

269. "A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment or to receive something as a result of a legal arrangement or instrument."

270. Plaintiff contends that this is common practice by all defendants nationwide. Some or all Defendants are under investigation by the U.S. Department of Justice and the Attorneys Generals of both the United States and Massachusetts.

271. Plaintiff is seeking an order from this Court, finding that the judgment of foreclosure was obtained in violation of his Constitutional rights, was obtained by means of fraud and an order setting aside the judgment of foreclosure that was fraudulently obtained, and obtained in violation of the US and State Constitutional Rights of the Plaintiff.

272. On and after October 1, 2004, as a pattern and practice, Defendants AMC, BOA, BONY, Optima Mortgage and MERS through their attorneys ABLITT and GWP its agents and or employees continued to create and execute many fraudulent assignments of mortgages on behalf of defendants AMC, BOA, BONY and MERS. Through August 10, 2012, defendant ABLITT and GWP its agents and or employees, and defendant BONY and BOA sold and transferred defendant BONY and BOAs alleged ownership interests in subject mortgage loans to various plaintiffs in actions wherein defendant ABLITT and or GWP were plaintiff's counsel.

273. Defendant AMC and their employees and or agents agreed to create and did create an enterprise where agents and or employees of Defendant ABLITT, BOA and MERS (and possibly other entities) would create and execute false assignments of mortgages on cases wherein defendant ABLITT was the foreclosing attorney because it resulted in millions of dollars in fees to defendant ABLITT, BONY, & BOA.

274. These funds were reinvested in the various entities of the enterprise to assure continued operation. Defendant ABLITT had an agreement with defendants AMC and BONY wherein agents and or employees from ABLITT, BOA and MER would create these false assignments of mortgage, then the defendant ABLITT and or employees would act as agents of defendants AMC and BONY with the approval and consent of defendant AMC, B O N Y and execute those false assignments of mortgage in order to create the appearance of a legitimate transfer of an interest in a mortgage. Defendants AMC, BONY, ABLITT, BOA, and MERS went along with this conspiracy to defraud scheme because it was paid money to do so. When done on a grand scale, this type of creation of fraudulent assignments is known as "robo-signing".

275. Defendants AMC, BONY, ABLITT and MERS knew that false interests in mortgages were being fraudulently created in defendant BONYs name by defendants ABLITT, BOA and MERS and or their employees and or agents. Defendants AMC, and BONY were a party to the conspiracy to defraud through its intentional acquiescence in this arrangement because it resulted in defendant BONY successful foreclosures of Massachusetts real property. This practice impacted interstate commerce because all the loans were federally related and many of these properties were insured by federal government sponsored entities such as Fannie Mae, Freddy Mac and the FHA.

276. Defendants AMC, MERS, BONY, GWP and ABLITT, and its agents or employees, filed fraudulent documents in the courts to convince the judges and parties that defendant BONY had a legitimate ownership interest in the subject mortgage loans. This falsely bolstered all the foreclosure cases, improved debt collection and assured judgments of foreclosure.

277. Defendant AMC, BONY, GWP, MERS and BOA should have known the actual assignment of mortgage had to take place prior to the day of the closing as required by the Trustee. The insurance carrier or the Trust would have been in violation of Regulation AB, Item 1122(d) (4)(ii). *Either the trust is in violation or the assignments are a fraud.*

278. However, Defendants ABLITT, GWP and or their agents or employees knew that if reasonable investigative procedures were in place that it would make their scheme to defraud very difficult, if not impossible to carry out. As attorneys exercising their own independent judgment and ethics would very likely not file the fraudulent assignments and complaints based thereon. At the time defendant ABLITT and or their employees or agents filed the complaint and or Motion from Relief from Stay, they knew or should have known the assignment was false. Defendant Deirdre Cavanaugh and Rachel D. Costa were parties to the conspiracy to defraud because they both signed the Motion from Relief from Stay (MFRFS) regardless of its truth or falsity.

279. Defendant BOA made negative credit references on plaintiff's credit report. They sent dunning letters to plaintiff claiming that BOA was the rightful owner of the mortgage and they are the servicer. Plaintiff relied on the misrepresentations to his detriment as he paid monies to defendants through his bankruptcy payments. The false assignment of mortgage was a material misrepresentation designed to bolster the false belief in the plaintiff that defendant BOA was the rightful owner of plaintiff's mortgage. When plaintiff questioned defendants BOA, GWP and ABLITT its agents and or employees about the legitimacy of defendant BOA ownership in his mortgage, those defendants responded with further misrepresentations through writings that the debt owed to defendant BOA was legitimate and that BOA was the rightful owner of the mortgage.

280. Plaintiff initially relied upon these false and fraudulent misrepresentations to plaintiff's detriment. When I conveyed this information to my family it caused extreme discord between us. As it was learned that, I the plaintiff, had made a financially devastating error. In failing to speak with true owner of the mortgage BONY when plaintiff was negotiating with BOA (formally Countrywide Home Loans) for a modification, by making payments to BOA through bankruptcy when in fact,

payments were not going to the true owner and that the ownership of my residence was at substantial risk. This resulted in great emotional suffering, loss of companionship, loss of enjoyment of life, loss of consortium, disruption to my children with uncertainty as to where they would live and go to school, and physical discomfort in loss of appetite, and loss of sleep.

281. Plaintiff deserves the right of relief from Defendants and has been damaged due to the fraudulent foreclosure on plaintiff home.

## FIRST CAUSE OF ACTION

### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. §1692
### (AGAINST DEFENDANTS BOA, BONY, MERS, ABLITT, GWP, and OPTIMA MORTGAGE)

282. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged here.

283. Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a (3)

284. All defendants and or employees and or agents are debt collectors within the meaning of the FDCPA, 15 U.S.C. §1692a (6).

285. The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in unfair and/or deceptive practices during the collection of a debt. Plaintiff, is a "consumer" within the meaning of FDCPA, 15 U.S.C. §1692a (3).

286. Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the following:

   (A) All Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person.

   (B) All Defendant violated 15 U.S.C. §1692e (6) by sale or transfer of any interest in the debt will cause the consumer to lose any claim or defense to payment of the debt.

   (C) All defendant violated 15 U.S.C. §1692e (2) by falsely representing the character, amount, or legal status of any debt.

   (D) All defendants violated 15 U.S.C. §1692e (6) by sale or transfer of any interest in the debt will cause the consumer to lose any claim or defense to payment of the debt.

(E) ALL defendants violated 15 U.S.C. §1692e(8) by communicating or threatening to communicate to any persons credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(F) All defendants ABLITT, BOA, BONY, GWP violated 15 U.S.C. §1692 e (10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(G) All defendants GWP, ABLITT, BONY, BOA violated 15 U.S.C. §1692f (1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(H) All defendants BONY, BOA, GWP and ABLITT violated 15 U.S.C. §1692e (11) by the failure to disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector on or about September 27, 2012.

(I) All defendants GWP, ABLITT, BONY, MERS and BOA violated 15 U.S.C. §1692f (6) taken or threatened to unlawfully repossess or disable the consumer's property.

(J) All defendant BONY, BOA, GWP, ABLITT and employees; violated 15 U.S.C. §1692e (14) by the use of any name other than the true name of the debt collector's business.

287. All defendants' collection activities described herein violate the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692a *et seq.)* in that defendants' were claiming, attempting and threatening to collect and enforced this consumer mortgage debt by foreclosure action where they knew or should have known that the right to foreclosure did not exist under the law because: Defendants BONY and BOA through their attorneys GWP and ABLITT and or employees and or agents did not have standing to pursue the foreclosure action.

288. All defendants violated 15 U.S.C. §1692g by, within five days after the initial communication with Plaintiff in connection with the collection of any debt, failing to send Plaintiff a written notice containing

a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

289. Any denial to the contrary must be supported by strict and convincing evidence, merely labeling oneself as a Trustee when, in fact, a large percentage of their business is collecting a debt also qualifies all defendants as "debt collectors" under the law.

290. For statute of limitations purpose it was impossible for plaintiff to prove his case until the fraud settlement between the Attorney Generals and the Banks, and until I received letters from Alissa A Reatz BONY stating they did not own the loan or property on or about August 30 2012, And when I received letter from BOA attorney on or about September 29, 2012 stating that BONY owned plaintiffs loan and until discovery upon the defendants, Specifically documents "created" by Sandra J. Robinson and individuals forgery documentation, lacking authority and specific knowledge about the documents, such as the AOM / Notaries and affidavits, motions for summary judgment that were executed and presented to the Courts all in furtherance of the defendants' illegal scheme to divest me of my property.

291. The plaintiff reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the plaintiff interest so demand.

292. As a result of the aforesaid FDCPA violations, plaintiff has been subject to false and illegal collection activities, and has therefore been harmed due to the slander to his credit and emotional issues proximately caused by these defendants. Plaintiff has retained counsel and is entitled to reimbursement of my cost and attorneys fees.

WHEREFORE, Plaintiff prays that this honorable Court award him damages from Defendants for the claims set forth herein including litigation fees and costs, loss of home, Compensatory, Actual damages, damages to credit and any other and further relief which is just and proper under the circumstances pursuant to 15 U.S.C. §1692k.

## SECOND CAUSE OF ACTION

### Violation of
### MGL c. 93A
### Unfair or Deceptive Acts or Practices in Violation of G. L. c. 93A, § 2
### (AGAINST ALL DEFENDANTS EXCEPT GWP AND THEIR EMPLOYEES)

### Failure to Register Transfer of Beneficial Interests in Mortgages Violation of G. L. e. 1185,67
### DEFENDANTS BONY, MERS and OPTIMA MORTGAGE

293. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged here.

294. G. L. c. 185, § 67 permits the mortgaging of registered land, provided that all instruments which assign, extend, discharge and otherwise deal with the mortgage, shall be registered. By foreclosing on plaintiffs property without being the holder of the mortgage, each of the Defendants (BONY,MERS and Optima Mortgage) knew or should have known that its conduct violated G. L. c. 244, §1, et seq 0. L. c. 183, § 21, and G. L. c. 93A, § 2, including, without limitation, by violating 940 C.M.R. 3.16.

295. Defendant MERS refuse to send plaintiff a copy of the MERS milestone request which is a violation of the MGL 93a Unfair and Deceptive Trade Practices Act.

296. Defendants BOA (formally Countrywide) mislead plaintiff to believe he was going to get a loan modification and was told to fall 3 months behind to be eligible then BOA told plaintiff he was not eligible because his employment was seasonal Unfair and Deceptive Trade Practices MGL 93a violation.

297. All Defendants are not registered to collect debts or have a bond on file which is a requirement to collect debts in Massachusetts.

298. Upon information and belief, the Defendants assigned plaintiffs mortgage of registered land without registering such assignments as required by Massachusetts law until after foreclosure and the assignment

was recorded in the Norfolk Registry of Deeds on or about January 25, 2008 G. L. c. 244, §1, et seq 0. L.

c. 183, § 21, and G. L. c. 93A, § 2, including, without limitation, by violating 940 C.M.R. 3.16. .

299. Defendants BOA (Countrywide) acted as the mortgage holder and creditor on May 17, 2007 by ABLITT

filing a Motion For Relief From Stay in the Boston Federal Bankruptcy Court (case #  07-10729-JNF)

then shortly after withdrew its motion then ABLITT filed another Motion For Relief From Stay in the

same Boston Federal Bankruptcy Court (case #  07-10729-JNF) claiming BONY now owns the mortgage

and note of plaintiffs home, without the required conditions precedent. all notice up until this point was

from Countrywide to plaintiff, BONY, through their attorney ABLITT did not resend all notices to

plaintiff from the new claimed owner BONY which is a violation of MGL 93a Unfair and Deceptive

Trade Practices and Condition Precedent of the mortgage, plaintiff is damage and needs relief.

300. By failing to identify the correct present holder of the mortgage in notices Issued prior to foreclosure,

Defendants BONY, ABLITT and BOA (formally Countrywide) violated G. L. c. 244, § 1, et seq. and 0. L.

c. 93A, § 2, including, without limitation, by violating 940 C.M.R. 116.

301. Defendants PC, LD, SW, AMC, BONY, BOA through their attorney ABLITT and employees initiated

foreclosure proceedings on plaintiffs property located within Massachusetts for which it was not the actual

holder of the mortgage and had no chain of assignments on file with the Norfolk Registry of Deeds.

302. Defendant PC, LD, SW, AMC, BONY, BOA through their attorney ABLITT and employees knew or

should have known that it lacked the legal authority to foreclose without first becoming the holder of the

mortgage.

303. Defendants engaged in communications with mortgagors, in public notices, notices sent to plaintiff from

BOA and in court filings in which it falsely identified BOA (Countrywide) itself as the holder of plaintiffs

mortgage relevant to those communications in the Motion For Relief From Stay in the Boston Federal

Bankruptcy Court (Motion From Relief From Stay Attached from Countrywide).

304. BONY by falsely identifying itself as the holder of certain mortgages and by identifying itself as the party

authorized to foreclose upon plaintiffs mortgage, each of the defendants engaged in unfair and deceptive

acts and practices in violation of 940 C.M.R. 3.16 and G. L. c. 93A, § 2.

305. BOA (formally countrywide) by engaging in the servicing practices described above, each of the defendants engaged in deceptive acts and practices, in violation of G. L. c. 93A, § 2(a),51 and. regulations promulgated there under pursuant to G. L. c. 93A, § 2(c). The Defendants' deceptive conduct includes, without limitation:

   A. Deceiving Plaintiff about its loan modification programs.

   B. Deceiving Plaintiff with respect to the implementation of loan modifications and rules.

   C. Deceiving plaintiff about the details and status of foreclosure proceedings on his home.

306. Upon information and belief all defendants & and its employees has used unfair and Deceptive Trade Practices from May 5, 2005 by misrepresenting the truth, Creating fraudulent Documents and by working in concert to defraud the plaintiff of his home and money MGL 93a.

307. Defendant BOA and Sandra J. Robinson violated MGL 93a Unfair and Deceptive Trade Practices Act By refusing to provide plaintiff with a certified copy of his AOM after plaintiff sent numerous request and payments in the form of money orders and checks to her address that is on file with the Secretary of State's Office in Texas, BOA responded several time and the last time on about September 2012.

308. The acts and omissions of all defendants through their attorney ABLITT described herein hereto, or imposing void, unconscionable or otherwise unenforceable contract terms against the plaintiff or by violating statutory obligations, or by filing of causing to be filed with the registry of deeds and courts of law, documents that were false and or forged, or by failing to comply with the assignments of mortgages, affidavits with personal knowledge, or by attempting to conceal the existences of certain facts, and fraudulent court filings, all constitute acts or practices declared to be unfair, deceptive and lawful within the meanings of M.G.L c. 93 A, 2,9.

309. Optima Mortgage engaged in unfair and deceptive trade practices by insuring plaintiff property in 2005 when it was not the holder in due course MGL 93a Unfair and Deceptive Trade practices (See Exhibit 8).

310. All defendants violated the 93a Unfair and Deceptive Trade Practices Act by means of conspiring to defraud plaintiff of money and property through their writings and actions toward plaintiff.

311. Defendants Sandra J. Robinson and Tiffany Skaife did create a fraudulent assignment to defraud plaintiff of his money and property MGL 93a Unfair and Deceptive Trade Practices Act.

312. For statute of limitations purpose it was impossible for Plaintiff to prove his case until the fraud settlement between the Attorney Generals and the Banks, and until I received letter from BONY stating they did not own the loan or property on or about August 30, 2012, and until Discovery upon the defendants.

313. The Plaintiff reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the plaintiff interest so demand.

WHEREFORE, Plaintiff prays that this honorable Court award him damages from Defendants for the claims set forth herein including litigation fees and costs, loss of home, sleep and emotional stress, Compensatory, Actual and punitive damages, damages to credit and any other and further relief which is just and proper under the circumstances.

## THIRD CAUSE OF ACTION

### COMMON LAW FRAUD
### (AGAINST ALL DEFENDANTS)

314. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged here.

315. At all times material hereto, defendants had actual knowledge that their written statements as to alleged ownership of Plaintiffs home, the written statements as to the assignment of mortgage, the legal entitlement to demand monies from Plaintiff and institute foreclosure proceedings were false statements of material fact which were false when made and known by said defendants to be false when made.

316. Defendant ABLITT directed and controlled the conduct of defendants Deirdre Cavanaugh, Mathew R. Braucher, Rachel D. Costa and Waltor Porr.

317. Defendant G.W.P directed and controlled Erin M. Michaels, Richard A.Oetheimer, and Mathew J. Thaler who made the subject false statements and writings with the specific intent that Plaintiff rely thereon and with the separate specific intent, which separate specific intent was unknown to Plaintiff at the time, to defraud Plaintiff.

318. Defendants PC, LD, SW, AMC, BONY, through their attorneys GWP and ABLITT permitted illegal action to go on when they had specific knowledge that all assignments were false and that there was no way the assignments where valid because plaintiff mortgage file was securitized 2years earlier.

319. Defendant optima mortgage insured plaintiffs mortgage and collected on it, and provided a copy of insurance policy to defraud plaintiff into believing that they were the owners of my note at specific time.

320. Plaintiff reasonably relied upon the written statements of defendants and acted thereon, including but not limited to paying monies to Defendant B O A for BONY through bankruptcy, advising his fiancé and his family of the financially devastating error he made in reliance upon the material misstatements.

321. As a direct and proximate result of the actions and course of conduct of all Defendants, Plaintiff has suffered damages and deserves relief.

322. The fraudulent conduct engaged in by all the Defendants constitutes a separate and independent tort separate and apart from any breach of any contract.

323. The deliberate and concerted actions engaged in by the defendants as set forth above and under the circumstances set forth above constitutes the type of fraud for which attorneys' fees are awarded, and as such, Plaintiffs demand the assessment of his attorneys' fees against the Defendants.

324. For statute of limitations purpose it was impossible for Plaintiff to prove his case until the fraud settlement between the Attorney Generals and the Banks, and until I received letter from BONY stating they did not own the loan or property on or about September 2012, and until Discovery upon the defendants.

325. The Plaintiff reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the plaintiff interest so demand.

WHEREFORE, Plaintiff prays that this honorable Court award him damages from Defendants for the claims set forth herein including litigation fees and costs, loss of home, sleep and emotional stress, Compensatory, Actual and punitive damages, damages to credit and any other and further relief which is just and proper under the circumstances.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## EXCEPT PUSHPIN HOLDING LLC

### (Against All Defendants)

326. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff repeats and re alleges each and every allegation set forth above as if reasserted and re alleged here.

327. For statute of limitations purpose it was impossible for Plaintiff to prove his case until the fraud settlement between the Attorney Generals and the Banks, and until I received letter from BONY stating they did not own the loan or property on or about September 2012, and until Discovery upon the defendants.

328. The defendants acted intentionally and recklessly their conduct was extreme and outrageous their conduct was the cause of plaintiff home being foreclosed because of the fraudulent AOMs being filed and represented as true and correct and that BONY was the owner when in fact Optima mortgage sold mortgage and note to BOA in 2011 from the confirmation letter that plaintiff received from BONYs attorney GWP, all of these acts have cause plaintiff to severe emotional distress.

329. The actions of the defendants acts and omissions inflicted severe emotional distress upon Plaintiff

330. The actions of all Defendants, as set forth herein, have resulted in the Plaintiffs loss of the Property.

331. This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

332. All Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the mortgage. In fact, All Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

333. Defendants' PC, LD, SW, AMC BONY,AMC and ABLITT conduct fraudulently foreclosed on a property in which they had no right, title, or interest is so outrageous and extreme that it exceeds all bounds which are usually tolerated in a civilized community.

334. Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that he would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to the Property such that said title will regain its marketability and value.

335. At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Homeowner to suffer severe emotional distress.

336. As an actual and proximate cause of Defendants fraudulent foreclosed on Plaintiff's home, the Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

337. Plaintiff has been living under the constant emotional nightmare of losing his Property.

338. As a proximate cause of Defendants' conduct, Plaintiff has experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at his place of employment.

339. The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

340. The Plaintiff reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the plaintiff interest so demand.

WHEREFORE, Plaintiff prays that this honorable Court award him damages from Defendants for the claims set forth herein including litigation fees and costs, loss of home, sleep and emotional stress, Compensatory, Actual and punitive damages, damages to credit and any other and further relief which is just and proper under the circumstances.

## FIFTH CAUSE OF ACTION

## SLANDER OF TITLE

## (ALL DEFENDANTS)

341. Plaintiff repeats and re alleges each and every allegation set forth above as if reasserted and re alleged here.

342. Plaintiff incorporates here each and every allegation set forth above. Defendants, and each of them, disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein. This is including, but not limited to, the Notice of Default and the Assignment of mortgage.

343. All Defendants and employees and/or agents knew or should have known that such documents were improper at the time of the execution and delivery of said documents. Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the Property. By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiff's legal title was made to the world at large.

344. All Defendants knew or should have known that the Assignment Of Mortgage signed by Tiffany Skaife (TS) and Sandra J. Robinson was a fraud because there was no authority (TS to sign as assistant secretary) to make the assignment or TS wasn't appointment by the board of directors, As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

345. As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

346. As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, emotional and physical distress, resulting in the loss of sleep and other

injuries to his health and well-being. Plaintiff continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

347. At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive him of his exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

348. For statute of limitations purpose it was impossible for Plaintiff to prove his case until the fraud settlement between the Attorney Generals and the Banks, and until I received letter from BONY stating they did not own the loan or property on or about August 30, 2012 and until Discovery upon the defendants.

349. The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive and malicious. Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

350. The Plaintiff reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the plaintiff interest so demand.

WHEREFORE, Plaintiff prays that this honorable Court award him damages from Defendants for the claims set forth herein including litigation fees and costs, loss of home, sleep and emotional stress, Compensatory, Actual and punitive damages, damages to credit and any other and further relief which is just and proper under the circumstances.

## SIXTH CAUSE OF ACTION

### CIVAL CONSPIRACY

351. Plaintiff repeats and re alleges each and every allegation set forth above as if reasserted and re alleged here.

352. Plaintiff alleges that Defendants provided fake documentary evidence to the Court to supplement their plan to obtain Plaintiff's property. The agreement between the Defendants to provide evidence they knew was unauthenticated and therefore inadmissible and in many instances outright perjury comprises

the underlying tort or wrong Defendants have committed against Plaintiff in furtherance of their own financial goals.

353. At all times material hereto, all Defendants agreed, between and among themselves and in combination with each other and various agents, as to each overt act in furtherance of the conspiracy and enterprise, to engage in unlawful actions for a common purpose, to wit: to perpetrate a fraud upon Plaintiff through fraudulent written representations as to the ownership of the mortgage and note, amounts due thereon, threats of foreclosure, foreclosure and fraudulent foreclosure filings whereby the Defendant BONY would obtain the use and benefit, under fraudulent pretenses, of Plaintiffs real property at the expense of Plaintiff and without compensating Plaintiff there for; to unlawfully convert Plaintiffs real property and permanently deprive him thereof; and to cause all deleterious consequences of the Defendants' actions to be saddled upon Plaintiff, which consequences include but are not limited to the loss of real property; loss of money; the incurring of expenses; and the adverse effects of claimed defaults and foreclosures placed on his and his family's emotional stability; and the loss of Plaintiffs credit as negative reports were made thereon by Defendant B.O.A.

354. At all times material hereto, all Defendants had actual knowledge that their written statements as to the alleged ownership of Plaintiff's mortgage and note, the written statements as to the assignment of mortgage, the legal entitlement to demand monies from Plaintiff and instituted foreclosure proceedings and there were false statements of material fact which were false when made and known by said defendants to be false when made.

355. Defendants ABLITT, directed and controlled the conduct of defendants Rachel D. Costa, Deirdre Cavanaugh, Waltor Porr, Mathew R. Braucher, who made the subject false statements with the specific intent that Plaintiff rely thereon and with the separate specific intent, which separate specific intent was unknown to Plaintiff at the time to defraud Plaintiff

356. Plaintiff reasonably relied upon the written statements of defendants and acted thereon, including but not limited to paying monies to Defendant BOA (formally Countrywide) and BONY. Plaintiff was forced to advise his family of the financially devastating error he made in reliance upon the material

misstatements.

357. As a direct and proximate result of the overt, concerted, and conspiratorial actions of the defendants, Plaintiff has suffered significant damages well in excess of the jurisdictional limit of this Court.

358. The conspiracy to defraud and convert engaged in by the defendants constitutes a separate and distinct independent tort which is separate and apart from any breach of any contract.

359. The overt acts in furtherance of the conspiracy were as follows:

   A. The preparation and filing of the insurance policy by Optima Mortgage for full value of Plaintiff's home in 2005.

   B. Preparation and filing the Complaint to foreclose in the land court by BONY.

   C. The preparation of the first (1st) Motion from relief from stay filed in the BKC by ABLITT on behalf of BOA.

   D. The preparation of the second (2nd) Motion from relief from stay filed in the BKC by ABLITT on behalf of BONY.

   E. The preparation of the first (1st) AOM signed by Melissa Flanagan.

   F. The preparation and recordation of the second (2nd) AOM notarized by alleged Notary Sandra J. Robinson dated October 10, 2006 and filed in the Norfolk Registry of Deeds on February 25, 2008 created by BOA and employees and agents.

   G. Five (5) Eviction suits by AMC and BONY through their attorneys ABLITT in the Stoughton District Court.

   H. The preparations of the summary judgment filed by GWP.

   I. The preparation of the commitment letter BOA from Optima Mortgage to purchase Plaintiff's Mortgage and Note in 2011.

   J. The filing and reliance upon the Affidavit of Indebtedness executed by Mark Bishop, a known "robo-signor," completely lacked personal knowledge of any of the data contained in the AOI which was used to prove material facts in the 2006 foreclosure namely, amount allegedly in default and to whom the debt is owed. Compounding the aforesaid misdeeds.

K. All Defendant's behavior towards Plaintiff regarding the setting and re-setting of "foreclosure sale" of his property for multiple dates evidences a callous and blatant disregard for the good faith and fair dealing.

L. For statute of limitations purpose it was impossible for Plaintiff to prove his case until the fraud settlement between the Attorney Generals and the Banks, and until I received letter from BONY stating they did not own the loan or property on or about September 2012, and until Discovery upon the defendants.

M. The Plaintiff reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the plaintiff interest so demand.

WHEREFORE, Plaintiff prays that this honorable Court award him damages from Defendants for the claims set forth herein including litigation fees and costs, loss of home, sleep and emotional stress, Compensatory, Actual and punitive damages, damages to credit and any other and further relief which is just and proper under the circumstances.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA), 12 U.S.C. §2605 (AGAINST DEFENDANT BOA BONY, OPTIMA and MERS)

360. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged here.

361. Defendants BOA are servicers of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605.

362. Plaintiff's written requests for information about his account and correction of Defendants' numerous errors were "qualified written requests" within the meaning of RESPA

363. BOA deliberately failed to respond in a proper and timely way to Plaintiff's "qualified written requests" for information about, and corrections to, his mortgage account, in violation of 12 U.S.C. §2605(e).

364. For statute of limitations purpose it was impossible for Plaintiff to prove his case until the fraud settlement between the Attorney Generals and the Banks, and until I received letter from BONY

stating they did not own the loan or property on or about August 30 2012, and response from QWR that states BONY is the owner and until Discovery upon the defendants.

365. The Plaintiff reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the plaintiff interest so demand.

WHEREFORE, Plaintiff demands judgment against Wells Fargo for a proper accounting and application of his mortgage payments and for actual, statutory, treble and/or punitive damages, and attorney's fees and costs, along with any other and further relief as the court deems just and proper, pursuant to 12 U.S.C. §2605.

## EIGHT CAUSE OF ACTION

### VIOLATION OF TRUTH IN LENDING ACT (TILA), 15 U.S.C. §1641
### BY DEFENDANTS

### (AGAINST DEFENDANT BONY, BOA, AND OPTIMA ONLY)

366. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as through fully set forth herein.

367. Defendants violated TILA by failing to provide Plaintiff with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

368. Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq, were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

369. As a direct and proximate result of Defendants' violations Plaintiff have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

370. Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable

restitution and disgorgement of profits obtained by Defendants.

371. A new creditor must provide notice of its status pursuant to 15 U.S.C. §1641(g):

(1) In general: In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) The identity, address, telephone number of the new creditor;

(B) The date of transfer;

(C) How to reach an agent or party having authority to act on behalf of the new creditor;

(D) The location of the place where transfer of ownership of the debt is recorded; and

(E) Any other relevant information regarding the new creditor.

372. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

373. The Plaintiff reserves the right to seek additional relief or orders, including relief available prior to the commencement of trial should the plaintiff interest so demand. For statute of limitations purpose it was impossible for Plaintiff to prove his case until the fraud settlement between the Attorney Generals and the Banks, and until I received letter from BONY stating they did not own the loan or property on or about August 30, 2012, and until I received letter from BOAs attorney stating that BONY owned the mortgage and note and Discovery upon the defendants.

WHEREFORE, WHEREFORE, Plaintiff demands judgment for damages against BOA, BONY, Optima Mortgage and MERS for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1640(a).

# NINETH CAUSE OF ACTION
# VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681
# WILLFUL NON-COMPLIANCE
# (AGAINST DEFENDANT BOA ONLY)

374. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as through fully set forth herein.

375. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. §1681a(c).

376. BOA is a furnisher of information within the meaning of the FCRA, 15 U.S.C. §1681s-2.

377. BOA willfully violated the FCRA. Defendant's violations include, but are not limited to, the following:

   (a) BOA willfully violated 15 U.S.C. §1681b (f) by obtaining Plaintiff's consumer report without a
   permissible purpose as defined by15 U.S.C. §1681b.

378. BOA reported that they foreclosed on plaintiff's property when they did not and refused to correct it, and
     BOA is still reporting inaccurate information on my report.

379. BOA refused to report that the information was and is being disputed.

   WHEREFORE, Defendant demands judgment for damages against defendants for statutory damages, punitive
   damages to be determined by this honorable court, attorneys fees, cost pursuant to 15 U.S.C 1681n and to
   order defendants to remove inaccurate information from plaintiff credit report and to provide plaintiff with
   original documents and contracts that were give to credit bureaus to validate the account.

## TENTH CAUSE OF ACTION
## ABUSE OF LEGAL PROCESS
## ALL DEFENDANTS

380. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as through fully set forth herein.

381. This is an action for injunctive and declaratory relief and for damages based upon these defendants abuse
     of legal process in connection with the foreclosure.

382. From the 2007 foreclosure action to present, BOA and then BONY as successor, did not have sufficient
     documentation to establish it was the proper party to bring the action of foreclosure and the documentation
     upon which it relied on for standing was improperly manufactured by defendants, individually or jointly.

383. These defendants created and /or used false documentation in an effort to obtain a foreclosure final judgment against the plaintiff. These documents included the aforementioned AOMs and Affidavits of Indebtness. Furthermore there is an issue as to whether the individuals name that appeared on those documents has any information, personal or otherwise, relating to the information contained in the document and/or the authority to sign the documents.

384. Defendants utilized the AOMs and affidavits of Indebtness in this legal process to falsely represent to the Court that BOA and then BONY had the requisite standing to bring this mortgage foreclosure lawsuit and the sum due and which should be included in the foreclosure final judgment.

385. By creating and utilizing the false documents these defendants misused legal process and the court system to promote their best interest by misleading the court as to BOA to start a foreclosure act in the Federal Bankruptcy Court when they filed a Motion for relief from stay on May 17, 2007 and as to BONY starting a foreclosure preceding and actually foreclosing on plaintiffs property and by misleading the court as to the legitimacy of alleged "evidence" of "original" documents that they were relying upon to support their claims against Plaintiff.

386. These defendants should not have abused the foreclosure process by filing false documents to support their claim that BOA or BONY was the proper party to bring the foreclosure action.

387. These actions were willful and constituted an intentional misuse of process in an effort to wrongfully foreclose upon homeowner's property.

388. Therefore, Defendants misused civil legal process against homeowner in an effort to accomplish the foreclosure upon his home based upon false documents.

WHEREFORE, Plaintiff requests actual and special damages including attorney's fees and costs against these Defendants jointly and severally for abuse of legal process.

## THE PLAINTIFF DEMANDS TRIAL BY JURY

## AS TO ALL ISSUES RAISED BY THE COMPLAINT

Dated: October 9, 2012

Respectfully submitted,

Paul Jones Pro Se

572 Park Street

Stoughton, Ma 02072

617-458-0612

Pj22765@gmail.com

October 10, 2012

# VERIFICATION OF COMPLAINT AND CERTIFICATION

## STATE OF MASSACHUSETTS

### Plaintiff, Paul Jones, states as follows:

I am the Plaintiff in this civil proceeding.
I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or law.

I believe that this civil complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in this Complaint. I have filed this complaint in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this complaint is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Paul M. Jones

DATE October 10, 2012