UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-11503-RWZ


PAUL M. JONES

v.

BANK OF NEW YORK, et al.


MEMORANDUM OF DECISION

July 12, 2013

ZOBEL, D.J.

This case arises out of the allegedly improper assignment and foreclosure of a home mortgage.  Defendants – entities and individuals involved in the assignment, servicing, and foreclosure of the mortgage and resulting litigation – move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds of claim and issue preclusion, various procedural deficiencies, failure to state a claim upon which relief can be granted, and lack of federal jurisdiction.

**I. Background and Court Proceedings**

On June 22, 2004, plaintiff Paul M. Jones ("Jones") executed a promissory note payable to defendant Optima Mortgage Loan Corporation ("Optima") in the amount of $274,550.00.  To secure the note, Jones gave a mortgage on his residence located at 572 Park Street in Stoughton, Massachusetts (the "Property") to defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Optima.  The mortgage was recorded in the Norfolk County Registry of Deeds on March 29, 2005.

MERS subsequently assigned the mortgage to defendant Bank of New York (now BNY Mellon) ("BNY Mellon") as Trustee for the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2004-7.  The body of the assignment states only that it was signed in 2006, without a specified date, but the notarization of the document indicates that defendant Amanda Farrar signed the assignment as an Assistant Vice President for MERS on November 20, 2006.

At some point Jones fell behind on his loan payments, and BNY Mellon filed a complaint to foreclose in the Massachusetts Land Court on November 6, 2006.  BNY Mellon gave Jones written notice on January 12, 2007, of its intention to foreclose on the mortgage and sell the Property.  Jones filed for bankruptcy protection to stop the foreclosure sale, but the Bankruptcy Court granted BNY Mellon relief from the stay and leave to foreclose.  The foreclosure sale took place on December 3, 2007, and BNY Mellon purchased the Property.

A second assignment of the mortgage from MERS to BNY Mellon, dated October 10, 2006, was signed by defendant Tiffany Skaife as Assistant Secretary for MERS and notarized on January 25, 2008, by defendant Sandra Robinson.  This second assignment was filed at the Norfolk County Registry of Deeds on February 25, 2008.

A third assignment of the mortgage, dated October 21, 2008, was filed at the Norfolk Registry of Deeds on November 21, 2008.  It was labeled "Confirmatory Assignment of Mortgage" and stated that it confirmed and amended the second assignment to clarify that the "correct effective date memorializing the assignment of said Note and Mortgage is October 10, 2006."  This third assignment was signed by

defendant Mark Bishop as First Vice President of MERS and witnessed by defendant Melissa Flanagan.

On March 20, 2009, Jones, represented by counsel, filed suit against BNY Mellon and defendant Ablitt Law Offices, P.C. ("Ablitt")[1] in Norfolk Superior Court challenging the validity of the foreclosure sale of the Property.  In that action, Jones alleged that BNY Mellon did not have a valid assignment of his mortgage and therefore lacked the authority to foreclose.  He also claimed that Ablitt, which represented BNY Mellon in Land Court and subsequent proceedings, violated a duty of good faith to him by making false statements to the Land Court on BNY Mellon's behalf and failing to comply with applicable law in instituting foreclosure proceedings.  On September 28, 2009, the superior court allowed Ablitt's motion to dismiss for failure to state a claim for relief, holding that Jones failed to show Ablitt owed him a legal duty.

Undeterred by the dismissal, Jones filed this federal action pro se on August 10, 2012, against Ablitt and one of its attorneys alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and unfair or deceptive trade practices under Massachusetts law in connection with their representation of BNY Mellon in foreclosure proceedings.  Jones amended his complaint two months later on October 10, 2012, to append a bevy of additional defendants and claims under both federal and state law.

In the meantime, on October 22, 2012, the superior court granted BNY Mellon's

---

[1] Ablitt later changed its name to "Ablitt Scofield, P.C." but is listed as "Ablitt Law Office" in Jones's amended complaint.

motion for summary judgment in the state case, finding that the 2006 assignment of Jones's mortgage from MERS to BNY Mellon was valid as a matter of law.[2]   All defendants, save Optima[3], thereafter filed motions to dismiss in this court (Docket ## 11, 13, 25, 43, and 69).

Jones continues to occupy the Property.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Plausibility "is not akin to a probability requirement, but [requires] more than a sheer possibility ...."  Id.  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id.   The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice, In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003), but the court may also consider other documents the authenticity of which are not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint, Watterson v. Page, 987 F. 2d 1, 3-4 (1st Cir. 1993).

## III. Discussion

Comprised of 388 paragraphs spanning 64 pages, the sprawling and at times

---

[2] Jones's appeal of the superior court decision granting summary judgment to BNY Mellon is currently pending.  Jones chose not to appeal the superior court's dismissal of his claims against Ablitt.

[3] A default was entered against Optima pursuant to Fed. R. Civ. P. 55(a) on January 14, 2013.

4

disjointed amended complaint accuses over twenty separate defendants – BNY Mellon

as Trustee for the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series

2004-7, CWABS, Inc. ("CWABS")[4], Bank of America, N.A. ("BANA")[5], MERS, Optima,

law firms Goodwin Procter LLP ("Goodwin")[5] and Ablitt, and various individuals

affiliated with them[6] – of federal and state law violations in ten counts: (1) violation of

the FDCPA; (2) violation of Mass. Gen. Laws c. 93A and c. 185 § 67; (3) fraud; (4)

intentional infliction of emotional distress; (5) slander of title; (6) civil conspiracy; (7)

violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et

seq.; (8) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; (9)

willful noncompliance with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et

seq.; and (10) abuse of legal process.

     At the heart of Jones's claims is the contention that BNY Mellon did not have a

---

[4] It is unclear from the caption and body of the complaint whether CWABS, Inc. ("CWABS"), was intended to be named independently as a defendant or grouped together with BNY Mellon as Trustee. Jones later caused a summons to be served upon CWABS and communicated that CWABS was to be named as a separate defendant.

[5] BANA, the servicer for Jones's mortgage, is listed as "Bank of America (Formally [sic] Countrywide Home Loans, Inc.)" in the caption of the amended complaint.

[5] Goodwin defended BNY Mellon against Jones's lawsuit in Norfolk Superior Court.

[6] Due to discrepancies in the amended complaint, there is some confusion regarding which individuals are defendants in this case.  The individuals identified as defendants in the caption are: Ann Marie Cassano, Leon Daniels, Paul Connolly, Stephanie Whited, Richard A. Oetheimer, Erin M. Michael, Matthew J. Thaler, Waltor Porr, Matthew R. Braucher, Tiffany Skaife, Melissa Flanagan, Sandra J. Robinson, Amanda Farrar, and Mark Bishop.
    M. Kelly Mitchie is not named as a defendant in the caption, but is listed as a defendant in the "Parties" section of the complaint.  Since Mitchie has filed a motion to dismiss, the court will treat him or her as a defendant for the purposes of the present ruling.
    Two former employees of Ablitt, Deirdre Cavanaugh and Rachel D. Costa, are listed neither in the caption nor the "Parties" section, yet are referred to as "defendants" in other parts of the amended complaint.  As Cavanaugh and Costa have neither been served with the complaint nor entered an appearance, they will not be considered parties to this action.

valid assignment of his mortgage and thus lacked the legal authority to foreclose on the

Property.  Jones alleges that the assignments were invalid due to numerous reasons,

including untimeliness, forgery, the use of robo-signers, and lack of compliance with

the pooling and servicing agreement that governs the CWABS Trust.  He accuses

defendants of participating, to varying degrees, in the activities and events surrounding

the allegedly fraudulent foreclosure.  He also faults defendants for their response, or

lack thereof, to recent correspondence from him regarding the validity of the mortgage

assignment and foreclosure.  Because this court's jurisdiction depends on the existence

of viable federal claims, 28 U.S.C. § 1331, I address the federal claims first.[7]

### A.    FDCPA Violations (Count I) Against BANA, BNY Mellon, MERS, Ablitt, and Goodwin

Jones asserts that defendants BANA, BNY Mellon, MERS, Ablitt, and Goodwin,

and their employees and agents, unlawfully attempted to collect and enforce his

"consumer mortgage debt" by foreclosure when they knew or should have known that

BNY Mellon lacked a valid assignment and in so doing violated several provisions of

the FDCPA.  He also alleges, without much detail, that defendants failed to comply with

certain communication requirements in the statute.

To the extent that Jones complains of conduct by BNY Mellon and Ablitt in

connection with the assignment and foreclosure, such arguments are subject to claim

preclusion.  Massachusetts law governs the preclusive effect of a prior state court

---

[7] Though Jones purports to bring this action under diversity jurisdiction pursuant to 28 U.S.C. § 1332, he has failed to allege complete diversity of the parties and, in fact, indicates that several defendants are, like himself, citizens of Massachusetts.

judgment.  Giragosian v. Ryan, 549 F.3d 59, 63 (1st Cir. 2008).  Claim preclusion, also known as res judicata, prevents the relitigation of claims that a party "had the opportunity and incentive to fully litigate . . . in an earlier action."  Id.   There are three essential elements: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause[s] of action; and (3) a prior final judgment on the merits."  McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006).  With respect to the second element, causes of actions are identical if they derive "from the same transaction or series of connected transactions," id.; "thus, claims not actually raised [in prior litigation] will be barred if they arise from the same common nucleus of facts as the claims that were litigated."  Kucharski v. Tribeca Lending Corp., 620 F. Supp. 2d 147, 150 (D. Mass. 2009).   Here, Jones, BNY Mellon, and Ablitt were all parties in the prior superior court case.  Both cases arise out of the same transaction and nucleus of facts (the foreclosure of the Property by BNY Mellon and its authority to do so); claims pertaining to defendants' conduct and rights vis-à-vis the foreclosure could have been raised and litigated in the original state case.  See Kucharski, 620 F. Supp. 2d at 151 (barring plaintiff's claims relating to defendant mortgagee's alleged lack of disclosures in loan transaction where she had previously litigated claims arising from the refinancing and foreclosure of her home).  Finally, the superior court's dismissal of the state case against Ablitt and grant of summary judgment to BNY Mellon were final judgments on the merits.

     Similarly, Jones's FDCPA claims against BANA, BNY Mellon, MERS, Ablitt, and Goodwin that are predicated on the invalidity of the assignment and foreclosure are

barred by issue preclusion.  Issue preclusion, or collateral estoppel, prohibits

relitigation of any factual or legal issue that was decided in previous litigation and

applies where "(1) the issues raised in the two actions are the same; (2) the issue was

actually litigated in the earlier action; (3) the issue was determined by a valid and

binding final judgment; and (4) the determination of the issue was necessary to that

judgment." Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012).  Count

I alleges that certain conduct by defendants was unlawful and deceptive precisely

because BNY Mellon did not have the right to foreclose on the property.  Yet the

superior court upheld the foreclosure in a valid and binding final judgment, finding that

"[p]laintiff's claim that the assignment of his Mortgage from MERS to BNY Mellon as

Trustee is invalid fails as a matter of law." Jones v. Bank of New York, No. CV2009-

00471 (Mass. Super. October 19, 2012); Docket # 12, Ex. 4.  The validity of the

assignment and foreclosure of Jones's mortgage is thus a closed issue, and he cannot

relitigate it here.  Any claims that rest on alleged deficiencies in the assignment or

foreclosure process fail.

That said, not all of Jones's FDCPA claims are precluded by the prior state

judgment.  The FDCPA prohibits attempts to collect an otherwise valid debt using

improper methods, and Jones makes several allegations to that effect.  He charges

defendants with, inter alia, engaging in harassing, oppressive, or abusive conduct, 15

U.S.C. § 1692d; falsely representing the character, amount, or legal status of his debt,

id. § 1692e(2); communicating or threatening to communicate false credit information,

id. § 1692e(8); using false representation or deceptive means to collect debt or obtain

information, id. § 1692e(10); and using a name other than the true name of the debt
collector's business, id. § 1692e(14).  Jones also alleges that defendants failed to
disclose in written communications that they were debt collectors attempting to collect a
debt, 15 U.S.C. § 1692e(11), and that they failed to send him written notice about the
debt within five days after initial communication regarding its collection, id. § 1692(g).

Though not entirely clear from the amended complaint, the basis for these
claims appears to be defendants' response, or lack thereof, to correspondence sent by
Jones in the fall of 2012.  In August 2012, Jones wrote a letter to BNY Mellon
challenging the 2007 foreclosure sale of the Property on several grounds (including the
validity of the assignment) and requesting that it be set aside.  An employee of BNY
Mellon replied by email on August 30, 2012, indicating that BNY Mellon, as "a
Trustee[,] . . . do[es] not physically own the loan or the property" and "do[es] not have
any say in how the property is disposed, loan modifications, code violations, etc."
Compl. ¶ 25; see also Ex. 1.  These matters, she noted, are "the responsibility of the
Servicer," BANA, who is "the direct and only contact in regards to your request."  Id.
Jones took this response as a damning admission by BNY Mellon that it was never
validly assigned the mortgage and, armed with this "proof," sent additional letters to
BNY Mellon, Countrywide Home Loans (BANA's predecessor), Ablitt, and Goodwin.
Jones faults defendants for thereafter failing to "correct" their prior representations in
state and federal court regarding the assignment and ownership of the mortgage.  Even
under a generous reading, the amended complaint does not sufficiently explain how
such alleged inaction violates the cited sections of the FDCPA.  Insofar as he may be

complaining of other instances of wrongdoing, Jones offers very little, beyond

conclusory statements and recitations of statutory language, to make out his claims.

That is simply not enough.

Count I is dismissed.[8]

### B. RESPA Violations (Count VII) Against BANA, BNY Mellon, and MERS

The only provision of RESPA specifically cited in the amended complaint is 12

U.S.C. § 2605(e), which mandates that "[i]f any servicer of a federally related mortgage

loan receives a qualified written request from the borrower . . . for information relating

to the servicing of such loan, the servicer shall provide a written response

acknowledging receipt of the correspondence within 20 days" and must make

appropriate corrections to the borrower's account or provide a written explanation or

clarification within 60 days. Id. at § 2605(e)(1)(A) and (2).  To make out a claim under §

2605(e), a plaintiff must allege sufficient facts to "show: (1) that the servicer failed to

comply with the statute's [qualified written request] rules; and (2) that the plaintiff

incurred 'actual damages' as a consequence of the servicer's failure." Okoye v. Bank

of New York Mellon, CIV. A. No. 10-11563-DPW, 2011 WL 3269686, at *17 (D. Mass.

July 28, 2011) (quoting Anokhin v. BAC Home Loans Servicing, LLP, No. 2:10-cv-

00395-MCE-EFB, 2010 WL 5393972, at *3 (E.D. Cal. Dec. 22, 2010)).

BNY Mellon and MERS are not loan servicers and fall outside the reach of this

provision.  As for BANA, Jones alleges that it violated § 2605(e) by failing to properly

---

[8] Some defendants also invoke FDCPA's one-year statute of limitations.  Because Jones's claims are precluded on other grounds, it is not necessary to address those arguments here.

and timely respond to a qualified written request ("QWR") he sent on or about July 9,

2012.  BANA, through counsel, sent Jones a letter dated September 27, 2012, in which

it addressed his requests and inquiries.  It appears BANA did not send

acknowledgment of receipt of Jones's QWR within 20 days as required by §

2605(e)(1)(A), although the servicer did provide a written response to him within 60

days (excluding holidays and weekends) pursuant to § 2605(e)(2).  Nonetheless, Jones

cannot recover on this count because he fails to plead any actual damages from

BANA's failure to respond.  See, e.g., Williams v. Litton Loan Servicing, CA 10-11866-

MLW, 2011 WL 3585528, at *4 (D. Mass. Aug. 15, 2011) ("Without such a showing [of

pecuniary damages], a RESPA claims is not actionable.") (dismissing RESPA claim

where complaint did not allege that defendant's failure to respond to QWR resulted in

actual damages); Okoye, 2011 WL 3269686, at *17 (same) (listing cases).

Accordingly, the RESPA claim is dismissed.[9]

### C.    TILA Violations (Count VIII) Against BANA and BNY Mellon

The complaint appears to allege that BANA and BNY Mellon violated TILA in two

ways: by failing to provide Jones with accurate material disclosures in the origination of

his loan,[10] 15 U.S.C. § 1601 et seq., and by failing to comply with new creditor notice

requirements, 15 U.S.C. § 1641(g).

---

[9] Elsewhere in the amended complaint, Jones refers broadly to violations of RESPA stemming from defendants' alleged failure to timely notify him of the mortgage assignment.  However, he neither identifies the RESPA provisions implicated nor provides any elaboration regarding how defendants violated them.

[10] For example, Jones refers to requirements "to fully inform home buyers of the pros and cons of adjustable rate mortgages" and "to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix."  Compl. ¶ 367.

To the extent Jones complains of TILA disclosure violations in connection with the origination of the mortgage, BANA and BNY Mellon argue that such claims cannot be asserted against them since they, as the servicer and subsequent assignee, respectively, played no role in that process and cannot be held liable for any possible violations by Optima.  The amended complaint neither identifies what required disclosures were not made nor addresses whether BANA and BNY Mellon are creditors within the meaning of the statute.  "While a servicer of a loan has the obligation to provide certain information to borrowers under the Act, 'liability for violations of TILA rests squarely and solely with creditors.'" Shaw v. BAC Home Loans Servicing, LP, CIV.A. 10-11021-DJC, 2013 WL 789195, at *7 (D. Mass. Mar. 1, 2013) (quoting Ording v. BAC Home Loans Servicing LP, No. 10-10670-MBB, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011)) (dismissing TILA claims where defendant was servicer and not a creditor).  Assignees may be held liable for the loan originator's failure to make disclosures required by TILA, but only if such violations are "apparent on the face of the disclosure statement" or the assignment was involuntary.  15 U.S.C. § 1641(a); Akar v. Fed. Nat. Mortgage Ass'n, 845 F. Supp. 2d 381, 393-94 (D. Mass. 2012). Jones does not allege facts showing that any violations of TILA were apparent on the face of the loan documents and does not claim that the assignment to BNY Mellon was involuntary.  The TILA disclosure claims against both BANA and BNY Mellon fail.

Jones fares no better under § 1641(g).  That provision, which requires a new owner or assignee of a debt to notify the borrower of the transfer, was added to the Act in 2009, see Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 §

404, 123 Stat. 1632, 1658, and does not apply retroactively to conduct occurring before

its effective date of May 20, 2009.  See, e.g., Bradford v. HSBC Mortg. Corp., 829 F.

Supp. 2d 340, 353 (E.D. Va. 2011) ("Nothing in TILA indicates that this provision

should be applied retroactively."); Eng v. Dimon, No. 11-3173 MMC, 2012 WL

2050367, at *1 (N.D. Cal. June 6, 2012); Connell v. CitiMortgage, Inc., CIV.A. 11-0443-

WS-C, 2012 WL 5511087, at *1 (S.D. Ala. Nov. 13, 2012).  Since BNY Mellon was

assigned Jones's mortgage in 2006, years prior to the enactment of § 1641(g), it had

no obligation to provide notice of the transfer to him.

Moreover, a civil action for a TILA violation must be brought within one year of

the violation.  15 U.S.C. § 1640(e).  The loan transaction took place in 2004, and the

mortgage was assigned in 2006, but Jones did not bring this action until October 2012.

Jones claims that the statute of limitations is tolled due to defendants' failure to provide

the required disclosures and notices.  He also asserts that it was "impossible" for him to

prove his case until after he learned of a large fraud settlement between several major

banks and state attorneys general in 2012 and after he had received the August 2012

email from BNY Mellon.  But "the mere existence of TILA violations and lack of

disclosure does not itself equitably toll the statute of limitations," Garcia v. Wachovia

Mortg. Corp., 676 F. Supp. 2d 895, 906 (C.D. Ca. 2009), and Jones fails to show that

he was "in some extraordinary way . . . prevented from asserting his rights," Corcoran v.

Saxon Mortg. Servs., Inc., CIV.A. 09-11468-NMG, 2010 WL 2106179, at *3 (D. Mass.

May 24, 2010) (citation omitted).  See also Okoye, 2011 WL 3269686, at *15

("Equitable tolling is inappropriate in this case because [plaintiffs] were aware – or

should have been aware – of the lack of disclosure within [ ] one year of closing.");
Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996) (rejecting plaintiff's
equitable tolling argument where "nothing prevented [her] from comparing the loan
contract, [defendant's] initial disclosures, and TILA's statutory and regulatory
requirements.").

Because Jones's TILA allegations do not state a claim for relief and are time-
barred, Count VIII is dismissed.

### D.    FCRA Violation (Count IX) Against BANA

Jones accuses BANA of willfully violating the FCRA by obtaining his consumer
report without a permissible purpose, 15 U.S.C. § 1681b(f).   The amended complaint,
however, lacks "factual content that allows the court to draw the reasonable inference
that [BANA] is liable for the misconduct alleged," Iqbal, 556 U.S. at 678; Jones provides
no explanation, beyond a single conclusory allegation, of BANA's actions and how they
violated the FCRA.

Jones also claims that BANA falsely reported having foreclosed on the Property
and that it continues to report inaccurate information on his credit report despite the
fact that the information is in dispute, all presumably in violation of 15 U.S.C. § 1681s-
2.  As a furnisher of information to consumer reporting agencies, BANA has a duty to
provide accurate information, § 1681s-2(a), and a duty to undertake an investigation
upon receipt of notice of dispute from a consumer reporting agency, § 1681s-2(b).  See
also Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 11 (D. Mass. 2004).  But BANA correctly
notes that there is no private right of action under § 1681s-2(a), which is enforced

14

exclusively by governmental agencies and officials.  <u>Id.</u>  As for claims of negligent reporting under § 1681s-2(b), a private cause of action exists "only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed."  <u>Id.</u> (citations omitted).  Here, Jones "has not alleged that he contacted any credit reporting agency or that the agency, in turn, got in touch with [BANA]," thereby triggering its BANA's duty to investigate.  <u>Id.</u>  He therefore fails to state a claim under the FCRA, and Count IX is dismissed.

### E.    Remaining Claims

As all the federal claims have been dismissed, I decline to retain supplemental jurisdiction over the remaining claims, which arise under Massachusetts statutory and common law.

## IV. Conclusion

Defendants' motions to dismiss the amended complaint (Docket ## 11, 13, 25, 43, and 69) are ALLOWED with prejudice as to Counts 1, 7, 8 and 9, and without prejudice as to Counts 2, 3, 4, 5, 6 and 10.  Ablitt's motion for leave to file a supplemental memorandum of law (Docket # 76) in connection with its motion to dismiss is ALLOWED.

    July 12, 2013                           /s/Rya W. Zobel

DATE                                          RYA W. ZOBEL
                                    UNITED STATES DISTRICT JUDGE