UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL M. JONES,
        Plaintiff,

                                        CIVIL ACTION NO.
                                        12-11503-RWZ

        v.


BANK OF NEW YORK,
OPTIMA MORTGAGE
LOAN CORPORATION, et al,
        Defendants.

### REPORT AND RECOMMENDATION RE:
### ASSESSMENT OF DAMAGES

### January 6, 2014

**BOWLER, U.S.M.J.**

On January 14, 2013, the Deputy Clerk issued a notice of
default under Fed.R.Civ.P. 55(a) ("Rule 55") against defendant
Optima Mortgage Corporation ("Optima") because of its failure to
plead or otherwise respond to an amended complaint after being
served with process on November 14, 2012.  (Docket Entry ## 34 &
57).  Thereafter, plaintiff Paul M. Jones ("plaintiff") filed a
motion for a default judgment.  (Docket Entry # 59).  On July 12,
2013, the district judge allowed the motion for a default
judgment and instructed plaintiff to file an affidavit setting
out his damages.  (Docket Entry # 78).  Plaintiff filed the
affidavit a few days later.  (Docket Entry # 79-1).  Upon

reviewing the affidavit listing the amount of damages for each claim (Docket Entry # 79-1), the district judge determined that the court could not accept the damages figures in the affidavit "without evidence" to support the figures.  The court thereafter referred the matter to this court for a hearing to assess damages.[1]  (Docket Entry # 80).

This court convened the hearing on August 15, 2013.  Optima did not appear.  Plaintiff appeared but did not testify.  Instead, he explained the basis for a number of the damages figures in the aforementioned affidavit (Docket Entry # 79-1) with respect to a number of the claims.  Plaintiff also filed five exhibits consisting of a schedule A to a title insurance policy naming Optima as an insured party with a face amount of $274,550 (Ex. 1) (Docket Entry # 46-1); a pooling and servicing agreement (Ex. 2); a copy of the summons (Ex. 3) (Docket Entry # 33); an appraisal of plaintiff's property (Ex. 4); and the affidavit previously filed (Ex. 5) (Docket Entry # 79-1).  The previously filed affidavit attached schedule A and a copy of the summons.  (Docket Entry # 79-1).  Consequently, the district

---

[1] Because the referral implicates a determination of damages after a default judgment, this court makes a recommended finding. See Conetta v. National Hair Care Centers, Inc., 236 F.3d 67, 73 (1st Cir. 2001) (the plaintiffs argue "correctly" that "the magistrate judge could at most hear the evidence and prepare a recommended decision as to the amount of damages").

judge already impliedly decided that the documents constituting exhibits one and three were not sufficient evidence to accept the damages figures in the affidavit.  (Docket Entry # 79-1).  After explaining the need to provide evidence to substantiate the damages, this court afforded plaintiff 15 days to file bills, invoices or any other evidence to substantiate the damages.

On September 4, 2013, plaintiff filed an affidavit ("the supplemental affidavit") with attached exhibits consisting of receipts evidencing plaintiff's payment of legal bills.  (Docket Entry # 89).  Plaintiff also filed attorney time records and an accompanying billing statement.  (Docket Entry # 88).

### PROCEDURAL BACKGROUND

On August 10, 2012, plaintiff filed this action pro se against defendant Ablitt Law Offices, P.C. ("Ablitt") and one of its attorneys claiming violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and Massachusetts General Laws chapter 93A ("chapter 93A").  (Docket Entry # 1).  On October 10, 2012, plaintiff amended the complaint to add a multitude of defendants, including Optima, for claims under both federal and state law in connection with a 2007 foreclosure of his property.  (Docket Entry # 5).

The amended complaint sets out the following counts:  (1) violations of the FDCPA; (2) violations of chapter 93A; (3)

3

fraud; (4) intentional infliction of emotional distress; (5) slander of title; (6) civil conspiracy; (7) violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 et seq.; (8) violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq.; (9) violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.; and (10) abuse of legal process.  With the exception of Count Nine, plaintiff names Optima in all ten counts.

On July 12, 2013, the district judge allowed various motions to dismiss filed by all defendants except for Optima.  (Docket Entry # 77).  The court dismissed counts one, seven, eight and nine with prejudice and the remaining counts without prejudice against these defendants.

## FACTUAL BACKGROUND

The underlying dispute concerns a promissory note dated June 22, 2004.  Under the note, plaintiff promised to pay Optima the amount of $274,550.  (Docket Entry # 5, ¶ 39).  In conjunction with the loan, plaintiff executed a mortgage on his property at 572 Park Street in Stoughton, Massachusetts ("the property") to defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), the mortgagee, acting as nominee for Optima and Optima's successors and assigns.

The district judge determined that in 2006 MERS, as nominee

4

for Optima, executed an assignment of the mortgage "to defendant
the Bank of New York (now BNY Mellon) ('BNY Mellon') as trustee
for the Certificate Holders, CWABS, Inc. Asset-Backed
Certificates, Series 2004-7" ("the Trust").   (Docket Entry # 77).
The assignment does not include a date but was notarized on
November 20, 2006.   (Docket Entry ## 1-1 & 77).

In contrast, the amended complaint states that BNY Mellon
did not transfer the mortgage into the Trust, which had a closing
date of September 28, 2004, although the "loan was securitized"
and transferred into the Trust.[2]   (Docket Entry # 5, ¶¶ 41-42 &
45).   Optima did not inform plaintiff about the transfer of the
"mortgage or note."   (Docket Entry # 5, ¶ 69).

A second assignment of the mortgage took place "from MERS
to BNY Mellon," as trustee of the Trust.   (Docket Entry # 77);
(Docket Entry # 1-4).   It was dated October 10, 2006, but not
filed at the Norfolk County Registry of Deeds until February 25,
2008.   A confirmatory assignment filed at the registry on
November 21, 2008, clarified "that the 'correct effective date
memorializing the assignment of said Note and Mortgage is October
10, 2006.'"   (Docket Entry # 77) (quoting the confirmatory

---

[2] "A party who defaults is taken to have conceded the truth of
the factual allegations in the complaint as establishing the
grounds for liability as to which damages will be calculated."
France v. Selective Ins. Co., 184 F.3d 4, 9 n.1 (1st Cir. 1999).

assignment).

"At some point Jones fell behind on his loan payments and BNY Mellon filed a complaint to foreclose in the Massachusetts Land Court on November 6, 2006." (Docket Entry # 77). Plaintiff "filed for bankruptcy protection but the Bankruptcy Court granted BNY Melon relief from the stay and leave to foreclose." (Docket Entry # 77). "The foreclosure sale took place on December 3, 2007, and BNY Mellon purchased the property." (Docket Entry # 77); (Docket Entry # 5, ¶ 166).

On March 20, 2009, plaintiff filed suit against BNY Mellon and Ablitt in Massachusetts Superior Court (Norfolk County) asserting that the foreclosure sale was invalid. (Docket Entry # 77). Plaintiff claimed that "BNY Mellon did not have a valid assignment of his mortgage and therefore lacked the authority to foreclose." (Docket Entry # 77). On September 28, 2009, the state court allowed a motion to dismiss filed by Ablitt. (Docket Entry # 77).

In the supplemental affidavit, plaintiff attests that Optima took out an insurance policy at a time when it did not own the property. He also avers that he hired four attorneys to represent him during the foreclosure proceeding and paid more than $40,000 in legal fees. The attached exhibits depict only $3,715 in payments. The supplemental affidavit additionally

states that plaintiff suffered emotional stress, including a
break up with his longtime girlfriend, "due to the illegal
foreclosure" and experienced severe headaches that required
hospitalization "over this whole ordeal." (Docket Entry # 89).
Plaintiff also expended more than $40,000 in home improvements.
(Docket Entry # 89).

### DISCUSSION

Where a defendant fails to answer in response to a
complaint, "the default will establish liability but leave open
the question of relief." Pizzo v. Gambee, 754 F.Supp.2d 234,
237-238 (D.Mass. 2010). When a default judgment is entered the
court allows for "the admission of the complaint" and takes "the
well-pleaded factual allegations of the complaint as true."
Metropolitan Life Ins. Co. v. Colon Rivera, 204 F.Supp.2d 273,
274-75 (D.P.R. 2002); see Goldman, Antonetti, Ferraiuoli,
Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 693 (1st
Cir. 1993) ("an entry of default against a defendant establishes
the defendant's liability"); see also Conetta v. Nat'l Hair Care
Centers, Inc., 236 F.3d 67, 76 (1st Cir. 2001) ("entry of default
prevents the defendant from disputing the truth of well-pleaded
facts in the complaint pertaining to liability").

Once the court has found liability, "'the [factfinder] is
required to award compensatory damages in an amount appropriate

to compensate the plaintiff for his loss.'" <u>Libertad v. Sanchez</u>, 215 F.3d 206, 208 (1st Cir. 2000) (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 52 (1983), in parenthetical) (emphasis omitted). It is "incumbent upon plaintiffs to establish the extent of the damages resulting from defendant's violations." <u>Eisler v. Stritzler</u>, 535 F.2d 148, 153-54 (1st Cir. 1976). "A hearing may be required" to determine damages "when the amount is in dispute or is not ascertainable from the pleadings." <u>In re The Home Restaurants, Inc. v. Family Restaurants, Inc.</u>, 285 F.3d 111, 114 (1st Cir. 2002); <u>see</u> <u>Ortiz-Gonzalez v. Fonovisa</u>, 277 F.3d 59, 64 (1st Cir. 2002). The district judge therefore referred the matter to this court to conduct a hearing to assess damages.

Rule 55(b)(2) allows this court to conduct hearings to "determine the amount of damages." Fed.R.Civ.P. 55(b)(2). Where, as here, there is a defaulting defendant, the court must assess defendant's "liability for each claim, then must assess damages by considering the type and amount of damages to be awarded, and whether enhanced damages, attorney's fees, and costs are appropriate." <u>Joe Hand Promotions, Inc. v. Rajan</u>, 2011 WL 3295424, at *1 (D.Mass. July 28, 2011).

Plaintiff identifies the claims upon which he seeks damages and the amount of damages for each claim in the affidavit submitted to the district judge and filed again as an exhibit at

the hearing before this court.   (Docket Entry # 79-1) (Ex. 5).[3]
In particular, he seeks relief in the amount of:  $274,550 for
damages arising out of violations of chapter 93A; $5,000 in
damages for Optima's fraud; $13,000 for Optima's intentional
infliction of emotional distress; $7,500 against Optima for
slander of title; $15,000 against Optima for civil conspiracy;
$5,000 against Optima for abuse of legal process; and $45,500 in
actual damages and $1,000 in statutory damages resulting from
Optima's violations of the FDCPA.[4]  Plaintiff also seeks damages
for court costs in the amount of $900 and attorney's fees.
(Docket Entry # 79-1).

   A.  Chapter 93A

   With respect to the chapter 93A count, plaintiff is seeking
damages in the amount of $274,550 as the value of the insurance

---

[3]   The affidavit requests specific amounts of damages for each
claim against Optima.  Plaintiff does not request a different
amount or argue that the evidence justifies a larger amount.
This court declines to address such an argument.  See Higgins v.
New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir.
1999) ("district court is free to disregard arguments that are
not adequately developed"); see also O'Connell v. Marrero-Recio,
724 F.3d 117, 124 (1st Cir. 2013) (district court "had no reason
to factor into its analysis of O'Connell's retaliation claim the
allegations concerning her participation in the NPP's primary
elections" because O'Connell's brief did not premise the claim on
this allegation).
[4]  Plaintiff does not seek damages under RESPA.  The district
judge determined that plaintiff did not plead any actual damages
under RESPA.  (Docket Entry # 77).

policy Optima received.   (Docket Entry # 79-1).   The chapter 93A
violations plaintiff identifies relative to Optima include the
following.   First, Optima, acting as the lender, took out an
insurance policy on plaintiff's property or residence in 2005
when it was "not the holder in due course."   (Docket Entry # 5, ¶
309).   Second, when Optima assigned the mortgage or the note on
the property to BNY Mellon, it "never informed plaintiff of [the]
sale or transfer of [the] mortgage or note" in violation of
chapter 93A.   (Docket Entry # 5, ¶ 69).   Third, all defendants,
including Optima, created fraudulent documents which defrauded
plaintiff of his property.   (Docket Entry # 5, ¶ 306).   Finally,
defendant Sandra J. Robinson ("Robinson"), the notary on the
second assignment, and defendant Tiffany Skaife ("Skaife"), the
individual signing the second assignment as MERS's assistant
secretary, defrauded plaintiff of his property.[5]   (Docket Entry #
5, ¶ 311).

     "Case law on the types of damages that are cognizable under
Chapter 93A continues to evolve."   Young v. Wells Fargo Bank,
N.A., 717 F.3d 224, 241 (1st Cir. 2013).   Recent decisions by the
Massachusetts Supreme Judicial Court "addressing the definition

---

[5]  The amended complaint describes these individuals as well as
the corresponding individuals in the first assignment as "robo
signors."   (Docket Entry # 5, ¶¶ 54 & 94).

of 'injury' under Chapter 93A . . . 'appear to have returned to the notion that injury under chapter 93A means economic injury in the traditional sense.'" Id. (quoting Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 255 (1st Cir. 2010).

Having established liability, plaintiff seeks the $274,550 as the "value of the insurance policy Optima Mortgage Corp. receive[d] in 2005." (Docket Entry # 79-1). The evidence he provides to establish his ability to recover the $274,550 amount of the insurance proceeds Optima received is a partial copy of an insurance policy. (Ex. 1) (Docket Entry # 79-1, p. 4).[6] The district judge already rejected this evidence as insufficient. In the supplemental affidavit, plaintiff merely adds that Optima "took out an insurance policy" at a time when it "did not own" the property. (Docket Entry # 89). Such "evidence" is not sufficient to show that Optima received the insurance proceeds of $274,550 even assuming arguendo the ability to recover restitution damages. Cf. In re M3 Power Razor System Marketing & Sales Practice Litigation, 270 F.R.D. 45, 60 (D.Mass. 2010) (dicta noting that "restitution as a [chapter 93A] remedy is reserved to actions by the Attorney General under § 4").

---

[6] The complete title insurance policy is in the record. (Docket Entry # 46-1).

The affidavit also lists $4,100 in attorney's fees as
damages.  The affidavit does not tie this amount of fees to any
particular claim.  Section nine of chapter 93A states that a
plaintiff is entitled to an award of "reasonable attorney's fees
and costs incurred in connection with" any action commenced under
chapter 93A.  The fees plaintiff seeks to recover, however, are
not those incurred in this chapter 93A action.  Rather, they
predate the filing of this action by at least three years.

As to costs, plaintiff fails to provide additional evidence
beyond the $900 amount stated in the affidavit before the
district judge and filed as an exhibit at the hearing.  Adhering
to the implied determination of the district judge that this cost
was not sufficient evidence of damages, it is not compensable.

Finally, as explained later in this opinion, there is
insufficient evidence to show that plaintiff experienced damages
resulting from Optima's misconduct except for damages in the form
of emotional distress and certain attorney's fees.  The amended
complaint includes evidence that plaintiff experienced a loss of
sleep, a loss of appetite, anxiety, depression and other forms of
emotional distress.  The affidavits (Docket Entry ## 79-1 & 89)
likewise set out emotional pain and suffering damages.  This
court has considered this evidence in awarding damages for mental
and emotional pain and suffering in the intentional infliction of

emotional distress claim.   The amended complaint does not include

amounts of pecuniary losses that plaintiff incurred as a result

of Optima's misconduct.[7]   Plaintiff undeniably fell behind on the

payments of the note and he does not identify the fees improperly

charged or added to the note by Optima or MERS, as the nominee

for Optima.   The exhibits and affidavits filed at the hearing and

thereafter depict emotional losses, attorney's fees and

conclusory statements regarding other forms of damages.

Thus, additional damages for the violation of chapter 93A

are not warranted.   Plaintiff fails to provide sufficient

evidence of pecuniary losses.   The emotional distress damages,

assuming dubitante they are compensable under chapter 93A,

duplicate those awarded under the intentional infliction of

emotional distress claim.   See Bogan v. City of Boston, 489 F.3d

417, 425 (1st Cir. 2007); Acevedo-Garcia v. Monroig, 351 F.3d

547, 567 (1st Cir. 2003).

B.   Fraud

Plaintiff next seeks $5,000 for the fraud perpetrated by

Optima.   (Docket Entry # 79-1).   Plaintiff's assertions include

that Optima engaged in fraud because it "insured plaintiffs

---

[7] The majority of the monetary figures in the amended complaint
relate to calculations made in the bankruptcy proceeding in
motions to lift the stay.

13

mortgage and collected on it, and provided a copy of insurance policy to defraud plaintiff into believing that they were the owners of my note at specific time." (Docket Entry # 5, ¶ 319) (punctuation and grammar in original). Thus, one aspect of the alleged fraud is that Optima insured "plaintiffs [sic] mortgage" in 2005 after the loan was already sold and transferred into the Trust in September 2004.[8] (Docket Entry # 5, ¶¶ 60, 62, 92, 107 & 319).

As evidence of damages, plaintiff provided a copy of the pooling and servicing agreement for the Trust dated September 1, 2004. (Ex. 2). The Trust has a closing date of September 28, 2004. (Docket Entry # 5, ¶¶ 60 & 92). Plaintiff additionally provided a copy of a portion of the insurance policy. (Ex. 1) (Docket Entry # 79-1).

With the presence of fraud established by virtue of the default judgment, plaintiff still fails to show the requisite causal connection between the fraud perpetrated by Optima and plaintiff's damages of $5,000. Plaintiff fails to show a casual connection between Optima's acts of insuring the mortgage or property in 2005 after the sale and securitization of the note into the Trust and the damages which plaintiff alleges. Thus,

---

[8] The amended complaint refers interchangeably to Optima insuring the mortgage and/or plaintiff's home.

14

although plaintiff asserts that he relied on the copy of the insurance policy to reasonably believe that Optima and other defendants owned the note (Docket Entry # 5, ¶ 319), he does not show and establish sufficient evidence of his damages resulting from such conduct or any other fraudulent conduct which provided the basis of Optima's liability for fraud.

C.  <u>Intentional Infliction of Emotional Distress</u>

Plaintiff seeks an award of $13,000 for the damages caused in relation to Optima's intentional infliction of emotional distress.  (Docket Entry # 79-1).  In the supplemental affidavit, plaintiff attests that he "has suffered from emotional stress and [has] broke[n] up with my girl friend of six years due to the illegal foreclosure of my home."[9]  (Docket Entry # 5, ¶ 89). Plaintiff also experienced "severe headaches" for a number of years and has been hospitalized for these headaches.  (Docket Entry # 89).  He experienced a loss of sleep, a loss of appetite as well as anxiety and depression.  Plaintiff does not provide sufficient evidence of any economic damages that he suffered as a result of Optima's intentional infliction of emotional distress.

It is true that, "Non-economic damages for emotional

_____

[9]  Plaintiff's additional assertion that his girlfriend told him "several times that she cannot be in a relationship or live in a home where we can be out in the street any time" (Docket Entry # 89) is hearsay.

distress are not easily computed and, therefore, determinations
of this type are extremely fact-sensitive." <u>Jones v.
Winnepesaukee Realty</u>, 990 F.2d 1, 4 (1st Cir. 1993); <u>see</u>
<u>Wagenmann v. Adams</u>, 829 F.2d 196, 216 (1st Cir. 1987)
(recognizing that "there is no scientific formula or measuring
device which can be applied to place a precise dollar value on
matters such as . . . fright, anxiety, . . . or emotional
scarring").  The supplemental affidavit nevertheless provides a
sufficient basis to support the existence of emotional distress
damages as a result of Optima's extreme and outrageous conduct.
<u>See generally</u> <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir.
1996) (setting out elements of intentional infliction of
emotional distress claim including that "conduct was 'extreme and
outrageous'").  The $13,000 figure is excessive and, in this
court's discretion, an amount of $7,000 is more appropriate.  <u>See</u>
<u>In re Rosa</u>, 313 B.R. 1, 7 (Bankr.D.Mass. 2004) (awarding $2,000
to plaintiff for emotional distress suffered due to sleepless
nights over impending fraudulent foreclosure); <u>see also</u> <u>In re
Barry</u>, 330 B.R. 28, 37 (Bankr.D.Mass. 2005) (awarding $5,000 for
emotional distress due to "stress, including loss of sleep caused
by the initial filing of the Superior Court Action").

    D.  <u>Slander of Title</u>

    Plaintiff seeks $7,500 in damages due to the slander of

title on his property.  (Docket Entry # 79-1).  As stated in the
amended complaint, Optima's conduct "adversely affected the title
to plaintiff's property."  (Docket Entry # 5, ¶ 223).  For
example, defendants, including Optima, disparaged the title by
publishing false or fraudulent documents including the
assignments of the mortgage.  (Docket Entry # 5, ¶¶ 125, 126,
132, 133, 136, 342 & 344).  The paragraph specific to the slander
count notes that publishing the second assignment signed by
Skaife, assistant secretary of MERS, and notarized by Robinson
put a cloud on plaintiff's title to the property.  (Docket Entry
# 1-4); (Docket Entry # 5, ¶ 344).  MERS signed the assignments,
including the foregoing assignment, "as nominee for Optima."
(Ex. 1-4).

The tort of slander of title compensates a plaintiff only
for pecuniary losses.[10]  See Restatement (Second) of Torts § 633
& cmt. j (1977) ("emotional distress and resulting harm may not
in an action for injurious falsehood be taken into account as an
element of damage . . . in determining the amount recoverable,

---

[10]  "Slander of title is a tort action for damage to real
property resulting from '"interference with title to real estate
by falsehoods which, although not personally defamatory, cause
the plaintiff pecuniary loss through interference with . . .
dominion over his property."'"  CMI Associates, LLC v. Regional
Financing Co., LLC, 775 F.Supp.2d 281, 289 (D.Mass. 2011)
(quoting Dulgarian v. Stone, 652 N.E.2d 603, 609 (Mass. 1995)).

even when there is such pecuniary loss as to make the publication of the injurious matter actionable"); see also <u>Vascular Solutions, Inc. v. Marine Polymer Technologies, Inc.</u>, 590 F.3d 56, 66 (1st Cir. 2009) (noting "Massachusetts' consistent reliance on the Restatement in injurious falsehood cases") (Lipez, Circuit Judge, concurring in part and dissenting in part); <u>Dulgarian v. Stone</u>, 652 N.E.2d at 609; <u>Restatement (Second) of Torts</u> § 624 (1977). The "usual manner" to establish damages for slander of title is to establish the pecuniary loss of a sale to a particular purchaser. <u>Restatement (Second) of Torts</u> § 633 cmt. c (1977). Here, plaintiff fails to identify a potential purchaser let alone establish pecuniary damages from the loss of a sale to a potential purchaser of the property. See, e.g., <u>CMI Associates, LLC v. Regional Financing Co., LLC</u>, 775 F.Supp.2d at 292 (allowing summary judgment on slander of title claim and explaining that plaintiffs did not present sufficient evidence that they lost potential purchaser of the property as a result of defendants' actions).

In addition to a lost sale, a recoverable pecuniary loss for slander of title may include "the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement." <u>Restatement (Second) of Torts</u> § 624(1)(b)

(1977); see also HipSaver, Inc. v. Kiel, 984 N.E.2d 755, 772

(Mass. 2013) (discussing similar tort of commercial disparagement

and noting that "recovery is limited to . . . 'the expense of

measures reasonably necessary to counteract the publication'")

(quoting Restatement (Second) of Torts § 633(1)).  In setting out

the slander of title claim, plaintiff attests that he "incurred

expenses in order to clear title to the Property." (Docket Entry

# 5, ¶ 345).  In 2008, plaintiff engaged a law firm to represent

him with respect to the foreclosure.  Time sheets show that the

work involved researching the validity of the "assignments from

Optima," the authority of a notary under Massachusetts law and

the dates of the mortgage assignments as effecting their

enforceability.  (Docket Entry # 88-1).  The billing statement

attached to the time sheets evidences that plaintiff paid the

reasonable amount of $4,010 in attorneys' fees to this law firm

for the work.  Finding these pecuniary expenses reasonably

necessary to counteract the doubt cast upon plaintiff's title by

the assignments by Optima through MERS acting as its nominee, an

award of $4,010 is appropriate under the slander claim.[11]

---

[11]  Fees for a different attorney based on receipts totaling
$3,715 are awarded under the abuse of process claim and therefore
need not be addressed under the slander claim.  See Bogan v. City
of Boston, 489 F.3d at 425; Acevedo-Garcia v. Monroig, 351 F.3d
at 567.

E.  Civil Conspiracy

Plaintiff next seeks $15,000 in damages incurred through Optima's participation in the civil conspiracy which led to the foreclosure of his property. (Docket Entry # 79-1). Plaintiff alleges that defendants, including Optima, agreed to provide evidence that was "fake" and "unauthenticated" in their plan to obtain plaintiff's property. (Docket Entry # 5, ¶ 352). Plaintiff identifies the underlying tort as fraud or perjury by providing the fake and unauthenticated documents. (Docket Entry # 5, ¶¶ 352 & 353). According to plaintiff, defendants, including Optima, knew that the assignments of the mortgage were false but nonetheless engaged in a conspiracy to defraud plaintiff and permanently deprive him of his property. (Docket Entry # 5, ¶¶ 352-354).

Plaintiff identifies a number of overt acts including the assignments executed by MERS as Optima's nominee. (Docket Entry # 5, ¶¶ 359(E) & 359(D)). As another overt act, the amended complaint states that Optima prepared and filed "the insurance policy . . . for full value of Plaintiff's home in 2005." (Docket Entry # 5, ¶ 359(A)).

The concerted action form of civil conspiracy alleged in the amended complaint requires the plaintiff to "show an underlying tortious act in which two or more persons acted in

20

concert and in furtherance of a common design or agreement."
Bartle v. Berry, 953 N.E.2d 243, 253 (Mass.App.Ct. 2011); accord
Orellana v. Deutsche Bank National Trust Co., 2013 WL 5348596, at
*11 (D.Mass. Aug. 30, 2013) ("concerted action theory of civil
conspiracy requires an underlying tort"); see Aetna Casualty
Surety Co. v. P & B Autobody, 43 F.3d 1546, 1565 (1ˢᵗ Cir. 1994).
This "form of civil conspiracy" imposes liability "on one
individual for the tort of another." Kurker v. Hill, 689 N.E.2d
833, 836 (Mass.App.Ct. 1998); see Grant v. John Hancock Mut. Life
Ins. Co., 183 F.Supp.2d 344, 363 (D.Mass. 2002) ("'defendant may
be held liable for actions done by others pursuant to a common
design or with the defendant's substantial assistance or
encouragement'"). Optima is therefore jointly liable for the
damages caused by the actions of the other defendants done
pursuant to a common design or with Optima's substantial
assistance. See Massachusetts Laborers' Health & Welfare Fund v.
Philip Morris, Inc., 62 F.Supp.2d 236, 244 (D.Mass. 1999)
(concerted form of civil conspiracy "is 'more akin to a theory of
common law joint liability in tort'" and "a defendant may be held
liable for actions done by others pursuant to a common design or
with the defendant's substantial assistance or encouragement");
see Restatement (Second) of Torts § 876 cmt. a (1979) ("A, B, C
and D come together to E's house at night to rob" E and, although

21

A breaks the door and D steals the jewelry, they "are all subject to liability to E for all damages caused by" the tortious acts); see also Metropolitan Property and Casualty Insurance Co. v. Boston Regional Physical Therapy, Inc., 550 F.Supp.2d 199, 203 (D.Mass. 2008).

Here, as elsewhere, plaintiff only provides sufficient evidence of damages with respect to the emotional loss, severe headaches and certain attorney's fees.  The emotional loss, severe headaches and emotional stress are fully compensated under the intentional infliction of emotional distress claim.  See Bogan v. City of Boston, 489 F.3d at 425; Acevedo-Garcia v. Monroig, 351 F.3d at 567 ("double awards for the same injury are impermissible"); Bender v. City of New York, 78 F.3d 787, 793 (2nd Cir. 1996) (where "two causes of action provide a legal theory for compensating one injury, only one recovery may be obtained").  The attorney's fees that plaintiff establishes are compensated under the abuse of process and slander of title claims and it is therefore not necessary to decide if they are compensable under the civil conspiracy claim.

Finally, plaintiff fails to sufficiently establish the expenditures for the home improvements.  Without more, his brevis averment that he expended $40,000 to improve the kitchen, the bathroom and "the complete house" does not establish these

22

damages.   (Docket Entry # 89).   He does not provide the dates he
made the improvements or any receipts or documentation that he
expended "over $40,000."[12]   (Docket Entry # 89).   In addition,
plaintiff fails to sufficiently establish that Optima's tortious
conduct or the conduct of the other defendants in the conspiracy
caused these expenditures.   For example, there is an insufficient
showing that the discrepancies in the assignments regarding
Skaife, Amanda Farrar and Robinson or the wrongful foreclosure on
the part of BNY Mellon caused, required or resulted in plaintiff
expending funds to improve his home.

F.   Abuse of Legal Process

Plaintiff next seeks an award of $5,000 in damages due to
Optima's abuse of legal process.   (Docket Entry # 79-1).
Plaintiff asserts that Optima in connection with the other
defendants abused the legal process by "creat[ing] and/or us[ing]
false documentation in an effort to obtain a foreclosure final
judgment against the plaintiff."   (Docket Entry # 5, ¶ 383).
Plaintiff posits that Optima and the other defendants
created and used false documents, such as the assignments of the
mortgage, and thereby "misused legal process."   (Docket Entry #

---

[12]   This failure to provide adequate proof precludes damages for
these improvements with respect to the other claims.   In the
alternative, a causal connection between the expenditures and
Optima's misconduct is lacking with respect to the other claims.

23

5, ¶ 385).  After plaintiff filed the bankruptcy petition on February 7, 2007, BNY Mellon obtained relief from the stay and proceeded to foreclose on plaintiff's property using the false documents, including the assignments of the mortgage by MERS as nominee for Optima.  (Docket Entry # 5, ¶¶ 104, 107 & 383-385).

Again, the default judgment establishes Optima's liability for abuse of process.[13]  In an action for abuse of process "the party injured is 'allowed to recover all such damages as are the natural and probable consequences of the action complained of.'" Millennium Equity Holdings, LLC v. Mahlowitz, 925 N.E.2d 513, 528 (Mass. 2010).  A damages award may therefore include compensation "for (1) the costs of defending against the improper action; (2) the emotional harm [the plaintiff] suffered; and (3) the harm to his reputation." Id.  "Each of these items is a compensable category of damages for an abuse of process claim so long as the specific damages are affirmatively proved." Id.  The costs incurred in defending against the abusive legal process are therefore "considered compensatory damages, not attorney's fees."

---

[13] "The essential elements of the tort [of abuse of process] are (1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." Datacomm Interface, Inc. v. Computerworld, Inc., 489 N.E.2d 185, 195 (Mass. 1986) (internal quotation marks omitted); Refuse & Environmental Systems, Inc. v. Industrial Services of America, Inc., 932 F.2d 37, 41 (1st Cir. 1991).

Id.

Turning to the evidence plaintiff offers to establish the requested $5,000 in damages, plaintiff states by affidavit that he "hired 4 attorneys to represent me since they [sic] illegal foreclosure of my home and has paid over $40,000 to the attorneys in legal fees." (Docket Entry # 89) (emphasis added). The attached documents supporting the supplemental affidavit consist of receipts all of which predate the December 2007 foreclosure. They evidence that plaintiff paid John F. Cullen, Esq. ("Attorney Cullen") a total of $3,715 in fees (Docket Entry # 89-1) for services he performed in the bankruptcy proceeding but also in connection with the foreclosure proceeding (Docket Entry # 89-1, p. 3) (Docket Entry # 5, ¶¶ 105, 157 & 168). This court therefore finds that plaintiff sufficiently established that he paid Attorney Cullen $3,715 in legal fees as a natural and probable consequence of Optima's abuse of legal process.[14]

Plaintiff fails to provide sufficient evidence that he "paid over $40,000" (Docket Entry # 89) in legal fees as a natural and probable consequence of Optima's abuse of legal process. The remaining attorney's fees ($4,010) are fully compensated under the slander of title claim. The emotional harm plaintiff

---

[14]   In the alternative, these fees are compensable under the slander of title claim.

suffered is already fully compensated under the intentional infliction of  emotional distress claim.  <u>See</u> <u>Bogan v. City of Boston</u>, 489 F.3d at 425.

G.  <u>Federal Debt Collection Practices Act</u>

Plaintiff seeks actual damages in the amount of $45,500 plus statutory damages in the amount of $1,000 for Optima's violations of the FDCPA.  (Docket Entry # 79-1).  In the amended complaint, plaintiff alleges a number of violations of the FDCPA that pertain to all defendants including Optima.  (Docket Entry # 5, ¶¶ 286-288).  These include violations of 15 U.S.C. § 1692e for using false and deceptive means to collect the debt by foreclosing on the property using the false assignments to establish the chain of title.  The amended complaint also alleges that defendants, including Optima, made false representations about the character, amount or legal status of the debt in violation of 15 U.S.C. § 1692e(2).

Under the FDCPA, a plaintiff is "entitled to actual damages, statutory damages of up to $1,000, and 'the costs of the action, together with a reasonable attorney's fee as determined by the court.'"  <u>French v. Corporate Receivables, Inc.</u>, 489 F.3d 402, 403 (1st Cir. 2007) (quoting section 1692k(a)(3)).  A plaintiff is entitled to receive the amount of "any actual damage sustained by [him] as a result of" the failure of the defendant to comply

with the FDCPA provision at issue. 15 U.S.C. § 1692k(a)(1). The principle behind the "actual damages portion of the statute is to fairly compensate the plaintiff, not to punish or deter the defendant." Sweetland v. Stevens & James, Inc., 563 F.Supp.2d 300, 304 (D.Me. 2008). Actual damages under the FDCPA "include damages for emotional distress caused by the debt collector's statutory violation." Sweetland v. Stevens & James, Inc., 563 F.Supp.2d at 304; see Maxwell v. Fairbanks Capital Corp., 281 B.R. 101, 117-18 (Bankr.D.Mass. 2002) (collecting authority).

The default judgment establishes that Optima violated the FDCPA. Its conduct however does not merit or justify an award of $45,500 and plaintiff fails to establish that he experienced this amount of actual damages as a result of Optima's FDCPA violations. In Sweetland, similar to this case, the defendant defaulted and the court awarded $2,500 to the plaintiff due to the debt collector's FDCPA violations. Sweetland v. Stevens & James, Inc., 563 F.Supp.2d at 303. In Donahue, another case involving a defaulting defendant, the court awarded $100 in actual damages. Donahue v. NFS, Inc., 781 F.Supp. 188, 192-194 (W.D.N.Y. 1991).

Here, the alleged emotional distress damages duplicate those already awarded in connection with the intentional infliction of emotional distress claim. As previously explained, an award of

27

duplicate damages for the same injury is improper.  See Bogan v. City of Boston, 489 F.3d at 425  ("law abhors duplicative recoveries" and "double awards for the same injury are [therefore] impermissible"); accord Acevedo-Garcia v. Monroig, 351 F.3d at 567; Bender v. City of New York, 78 F.3d at 793; see Clark v. Taylor, 710 F.2d 4, 8 (1st Cir. 1983) ("the amount of compensatory damages properly awardable does not depend on the number of theories under which [the] plaintiff may recover, but on the extent of his injury").  Plaintiff provides no other sufficient evidence of actual damages, including pecuniary damages, that he sustained as a result of Optima's failure to comply with the FDCPA.

It is also within a court's discretion to award "additional damages . . . but not exceeding $1,000."  Sweetland v. Stevens & James, Inc., 563 F.Supp.2d at 303; see 15 U.S.C. § 1692k(a)(2). In considering an award of statutory damages, the court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(a)(2).  Optima's violations of the FDCPA involve inter alia mischaracterizations of itself as the owner of the note.  Through MERS, Optima also assigned the mortgage after the closing date of the Trust and the assignments provided links in the chain of

title to foreclose and collect the debt purportedly owed under the note.  (Docket Entry # 5, ¶¶ 119, 120, 122, 125, 126, 132, 136, 137, 145, 171 & 184).  There is however insufficient evidence to show that Optima's noncompliance with section 1692e, or any of the other FDCPA sections plaintiff identifies (Docket Entry # 5, ¶ 286), was intentional.  The noncompliance of Optima was neither frequent nor persistent notwithstanding the repeated descriptions of the same violations numerous times in the amended complaint.  The nature of the noncompliance does not justify or support the requested $1,000 amount of statutory damages.  On balance and considering the relevant factors in section 1692k(b), a statutory award of $100 against Optima is appropriate.

In addition to statutory damages, "An award of attorney's fees to successful plaintiffs under the FDCPA is obligatory." French v. Corporate Receivables, Inc., 489 F.3d at 403. Plaintiff is proceeding pro se and does not provide billing records of any attorneys' fees that he paid to litigate *this* case.  The billing records he provides all predate the filing of this action by at least three years.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[15] an award of $14,825 ($3,715 + $4,010 + $7,000 + $100) against Optima as appropriate.

> /s/ Marianne B. Bowler
> **MARIANNE B. BOWLER**
> United States Magistrate Judge

---

[15] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  <u>See</u> Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.